In the

# United States Court of Appeals

### For the Seventh Circuit

No. 10-1681

MONDREA VINNING-EL,

*Plaintiff-Appellee*,

*v.*

JOHN EVANS and RICK SUTTON,

*Defendants-Appellants*.

Appeal from the United States District Court
for the Southern District of Illinois.
No. 05-cv-570-DRH-CJP—**David R. Herndon**, *Chief Judge*.

ARGUED FEBRUARY 25, 2011—DECIDED SEPTEMBER 16, 2011

Before EASTERBROOK, *Chief Judge*, and FLAUM and ROVNER, *Circuit Judges*.

EASTERBROOK, *Chief Judge*. While he was confined at Pinckneyville Correctional Center, Mondrea Vinning-El asked for a vegan diet. He told the prison's chaplain, Rick Sutton, that he adheres to the Moorish Science Temple of America. Sutton turned Vinning-El down, observing that the tenets of Moorish Science require a non-pork diet, which can include dairy

products and many kinds of meat and fish. Vinning-El, who contends that his religious beliefs require a vegan diet no matter what other members of his sect believe, then filed this suit against Sutton and John Evans, the warden, under both 42 U.S.C. §1983 and the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. §§ 2000cc to 2000cc–5. Both defendants moved for summary judgment, which the district court granted on the RLUIPA claim and denied on the §1983 claim. 694 F. Supp. 2d 1009 (S.D. Ill. 2010). Defendants have taken an interlocutory appeal, contending that they are entitled to the benefit of qualified immunity.

Vinning-El is no longer at Pinckneyville and is receiving a vegan diet at his current prison, so damages would be the only potential relief. The Supreme Court held in *Sossamon v. Texas*, 131 S. Ct. 1651 (2011), that money damages are not available in suits against states under the RLUIPA—and suits against state employees in their official capacity are treated as suits against the states themselves. See *Will v. Michigan Department of State Police*, 491 U.S. 58 (1989). To the extent that Vinning-El has sued Evans and Sutton in their personal capacities he fares no better, given our holding in *Nelson v. Miller*, 570 F.3d 868 (7th Cir. 2009), that RLUIPA does not authorize any kind of relief against public employees, as opposed to governmental bodies that receive federal funds and accept the conditions attached by the statute. So both defendants prevail against the RLUIPA claim, as the district court held.

Warden Evans is entitled to prevail on the §1983 claim without any need to consider immunity. Section 1983

does not authorize "supervisory liability." See *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1947–49 (2009). Section 1983 creates liability only for a defendant's personal acts or decisions. Vinning-El does not contend that Evans made or ratified the decision about his diet. The district court therefore should have granted Evans's motion for summary judgment.

The remaining subject is whether chaplain Sutton has qualified immunity, which comprises two questions: first whether the plaintiff has a good constitutional claim, and second whether the right in question was "clearly established" before the contested events. *Pearson v. Callahan*, 555 U.S. 223, 233–42 (2009), holds that the court has discretion to resolve either or both of these questions. We need to consider the first in order to facilitate discussion of the second, though it turns out to be unnecessary to give a definitive answer to either.

Although prisoners enjoy rights under the free-exercise clause of the first amendment (applied to the states by the due process clause of the fourteenth amendment), many decisions hold that these rights are subject to limits appropriate to the nature of prison life. Restrictions are permissible if they are reasonably related to legitimate penological objectives. *Turner v. Safley*, 482 U.S. 78, 89–91 (1987); see also, e.g., *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348–49 (1987).

Pinckneyville did not limit Vinning-El's right to worship. Instead it turned down a request for an accommodation of his demand for a diet that is unavailable to non-believers. *Employment Division v. Smith*, 494 U.S. 872

(1990), holds that the free-exercise clause does not require accommodation of religious practices, and that identical treatment of believers and non-believers satisfies the first amendment. The Supreme Court has never considered how *Smith* applies to prisons and whether it supersedes *Turner* when a prisoner seeks an accommodation. Several courts of appeals have noticed the tension between *Smith* and *Turner* and declined to decide which applies, to the extent that they differ. See, e.g., *Boles v. Neet*, 486 F.3d 1177, 1181–82 (10th Cir. 2007) (collecting authority). We likewise can postpone resolution of this question, for two reasons.

First, defendants briefed this appeal on the basis of *Turner* and even after the issue was raised at oral argument did not argue that we should apply *Smith*. Second, Illinois has not declined to accommodate prisoners' religious dietary requests. Vinning-El complains not so much about a lack of accommodation as he does about discrimination against particular religious beliefs. As Vinning-El characterizes chaplain Sutton's policy, the dietary rules of organized faiths will be accommodated, and the dietary rules of personal faiths will not be. *Smith* does not apply to such a policy; it did not change the norm forbidding materially different treatment of different religious faiths. See, e.g., *Al-Alamin v. Gramley*, 926 F.2d 680, 686 (7th Cir. 1991).

A personal religious faith is entitled to as much protection as one espoused by an organized group. *Frazee v. Illinois Department of Employment Security*, 489 U.S. 829, 834 (1989); see also *Hernandez v. CIR*, 490 U.S. 680, 699

(1989). Hierarchical religions, such as the Roman Catholic Church, believe that only the group's leaders can establish and articulate the group's tenets on central issues of faith. But non-hierarchical religions, such as most Protestant and Islamic sects, believe that every worshipper has a direct connection to God. This doctrine of the "priesthood of believers" was one of the major reasons for the Protestant schism from the Catholic Church. No state is entitled to insist that the Catholic Church is right and that adherents to every faith therefore must espouse all, and only, those beliefs that have the support of a sect's leadership. If chaplain Sutton refused to approve religious diets for inmates who differ on dietary questions from their church's leaders, he violated clearly established rules of constitutional law—for *Frazee* was decided long before Vinning-El sought a vegan diet.

But is this what Sutton did? Dean Lauren Robel, who briefed and argued this appeal as *amicus curiae* on Vinning-El's behalf, acknowledges that a special diet need not be provided on demand. Sincere religious beliefs must be accommodated (at least when failure to accommodate a particular belief would amount to discrimination against one sect, or a personal faith), but non-religious beliefs need not be. See, e.g., *Thomas v. Review Board*, 450 U.S. 707, 713 (1981); *United States v. Seeger*, 380 U.S. 163, 185 (1965); *Kaufman v. McCaughtry*, 419 F.3d 678, 681 (7th Cir. 2005); *Fifth Avenue Presbyterian Church v. New York City*, 293 F.3d 570, 574 (2d Cir. 2002). A prison is entitled to ensure that a given claim reflects a sincere religious belief, rather than a preference for the way a given diet

tastes, a belief that the preferred diet is less painful for animals, or a prisoner's desire to make a pest of himself and cause trouble for his captors. And although sincerity rather than orthodoxy is the touchstone, a prison still is entitled to give *some* consideration to an organization's tenets. For the more a given person's professed beliefs differ from the orthodox beliefs of his faith, the less likely they are to be sincerely held. Very few people who identify themselves as Baptists sincerely believe that a halal or vegan diet is obligatory on religious grounds. Such a belief isn't impossible, but it is sufficiently rare that a prison's chaplain could be skeptical and conduct an inquiry to determine whether the claim was nonetheless sincere.

So what did chaplain Sutton do? If he turned Vinning-El down for the sole reason that Moorish Science does not make a vegan diet a tenet of religious faith, then he violated Vinning-El's clearly established rights and is not entitled to immunity. But if Sutton thought Vinning-El insincere—thought, in other words, that he wanted a vegan diet for a non-religious reason—then Sutton is entitled to immunity, even if a judge or jury disagrees with the chaplain's conclusion. Immunity protects public employees who make reasonable errors in applying even clearly established law. See, e.g., *Malley v. Briggs*, 475 U.S. 335, 341 (1986) (qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law"); *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2085 (2011) (reiterating this conclusion).

Unfortunately, the district judge never addressed this question. Instead of asking whether chaplain Sutton

had evaluated Vinning-El's sincerity (as opposed to his orthodoxy), the judge framed as the controlling question whether denying Vinning-El's request for a vegan diet "was the least restrictive means of furthering a compelling governmental interest". 694 F. Supp. 2d at 1013. That's the standard of RLUIPA, see §2000cc–1(a), not the standard of the first amendment. It is also the standard advocated by the Justices who dissented in *Smith*.

After the Supreme Court decided *Smith*, Congress enacted the Religious Freedom Restoration Act, 42 U.S.C. §§ 2000bb to 2000bb–4, in an effort to adopt a least-restrictive-means approach for public actors generally. The Supreme Court replied in *Boerne v. Flores*, 521 U.S. 507 (1997), that the RFRA cannot be applied to states through §5 of the fourteenth amendment, precisely because it departs drastically from the holding of *Smith* and therefore does not "enforce" the fourteenth amendment, which is the extent of legislative power under §5. The RLUIPA, which came next, relies on the national commerce and spending powers. See 42 U.S.C. §§ 2000cc(a)(2), 2000cc–1(b). *Sossamon* recounts this history and emphasizes that both RFRA and RLUIPA establish standards that differ from the free-exercise clause of the first amendment.

The district court believed that our opinion in *Nelson* had superseded the Supreme Court's decisions and made RLUIPA's test the constitutional norm too. 694 F. Supp. 2d at 1013. Yet Congress cannot amend the Constitution by ordinary legislation (RLUIPA was not adopted through the means specified by Article V), and

a court of appeals cannot overrule the Supreme Court. It is true that some passages in *Nelson*, 570 F.3d at 880, 889, refer to §1983 and RLUIPA in the same breath, but judicial opinions are not statutes—let alone constitutional amendments. It is always important to understand opinions in light of their holdings and not take ambiguous statements for all they might be worth. None of the litigants in *Nelson* had asked us to hold that RLUIPA establishes a new constitutional standard, and we did not purport to do any such thing. Any language that could be misunderstood in this fashion is not compatible with *Boerne* or *Sossamon*. It is the opinions of the Supreme Court, not language of §2000cc–1(a) or this court, that must be applied when a question arises about the meaning of the first amendment's free-exercise clause.

For the reasons we have explained, to decide whether chaplain Sutton has qualified immunity, the district judge must determine whether he reasonably attempted to determine whether Vinning-El has a sincere belief that his religion requires a vegan diet. To put this slightly differently, the judge needs to know whether Sutton used the tenets of Moorish Science to disqualify Vinning-El, or only as a reason to suspect that Vinning-El may have been seeking a vegan diet for personal rather than religious reasons. Qualified immunity poses a question for the court, not a jury. See *Hunter v. Bryant*, 502 U.S. 224, 228 (1991). The district judge must hold a hearing and make whatever findings are required to resolve the qualified-immunity defense. If the judge concludes that Sutton based his decision on the tenets of Moorish

Science, rather than his understanding of Vinning-El's own religious beliefs, then Sutton is not entitled to immunity, and it will be necessary to hold a jury trial to determine whether Vinning-El actually had a sincere religious belief in the necessity of a vegan diet. (Even if Sutton acted for the wrong reason, and thus lacks immunity, Vinning-El cannot prevail unless he establishes that his sincere religious beliefs require a vegan diet.)

The decision with respect to Evans is reversed, and the case is remanded with directions to enter judgment in his favor. The decision with respect to Sutton is vacated, and the case is remanded for further proceedings consistent with this opinion.