# FOR PUBLICATION

APPELLANT PRO SE:

**JEFFREY ALLEN ROWE**
Pendleton, Indiana

ATTORNEYS FOR APPELLEES:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KATHY BRADLEY**
Deputy Attorney General
Indianapolis, Indiana



FILED
Oct 09 2012, 9:19 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JEFFREY ALLEN ROWE, | ) | |
| | ) | |
| Appellant-Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1204-PL-344 |
| | ) | |
| BRUCE LEMON, et al, | ) | |
| | ) | |
| Appellees-Defendants, | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Timothy Oakes, Judge
Cause No. 49D13-1107-PL-27692

**October 9, 2012**

**OPINION - FOR PUBLICATION**

**BARNES, Judge**

**Case Summary**

Jeffrey Rowe appeals the trial court's grant of summary judgment in favor of Bruce Lemmon, L.A. VanNatta, Mark Dodd, Stephen Hall, and Wayne Scaife (collectively "the Defendants"). We affirm in part, reverse in part, and remand.

**Issues**

We restate the dispositive issues before us as:

    I.    whether Rowe is entitled to pursue monetary damages against the Defendants under either 42 U.S.C. § 1983 or the Religious Land Use and Institutionalized Persons Act ("RLUIPA"); and

    II.    whether there is a genuine issue of material fact precluding summary judgment on Rowe's claims under RLUIPA.[1]

**Facts**

On December 8, 2010, Judge Magnus-Stinson of the United States District Court for the Southern District of Indiana entered a permanent injunction, to be effective within forty-five days, requiring the Indiana Department of Correction ("DOC") to provide meals certified as kosher to "all inmates who, for sincerely held religious reasons, request them in writing." App. p. 148. The injunction was not limited only to Jewish inmates, and it resulted from a class action lawsuit brought by DOC inmates under RLUIPA, a federal statute, after the DOC stopped offering certified kosher meals to inmates. In place of the kosher meals, the DOC had been offering a vegan diet option to those

---

[1] Because of our ultimate holding, it is unnecessary for us to address Rowe's argument regarding designation of evidence. Also, the State on appeal does not rely upon res judicata, and we need not address Rowe's argument on that point.

inmates instead. As stated by Judge Magnus-Stinson, the DOC had previously provided kosher meals not only to Jewish inmates, but also to non-Jewish inmates who had "a sincerely held religious reason" for requesting them. Id. at 121. Judge Magnus-Stinson also noted, as the DOC essentially conceded, that the vegan diet option was not kosher. In other words,

> despite the fact that the ingredients used in vegan meals are themselves kosher, the parties agree that a meal made from these ingredients is not necessarily kosher: The problem lies in the preparation, for if, at any point, non-kosher ingredients, water, or plates/utensils that have touched non-kosher food contaminates the vegan food, the meal is no longer kosher.

Id. at 125-26. The kosher meals that the DOC had been serving were prepackaged offsite, so as to avoid any possible contamination with prohibited foods.

On January 19, 2011, Rowe, an inmate at the Pendleton Correctional Facility ("Pendleton"), filed an "Offender Request for Religious Accommodation" asking that he be provided kosher meals. Id. at 110. Rowe is not Jewish. Instead, he professes belief in "Identity Christianity," also known as "The Church of Jesus Christ Christian, Aryan Nations." Id. at 108. "Identity Christians" believe that members of the white race are the actual physical descendants of the Twelve Ancient Tribes of Israel. Id. Rowe's request for kosher meals stated in part:

> I follow the Biblical Food Laws in Leviticus 11 and Deuteronomy 14. This requires that I only eat animals that part the hoof and chew the cud (i.e., cattle, sheep, antelope, buffalo/bison, caribou, deer/venison, elk, goat, moose etc.), certain birds (i.e. chicken, dove, goose, pheasant, pigeon etc.), and clean "creeping things" (i.e., locusts, crickets and

3

grasshoppers). . . . In addition, the Bible prohibits me from eating two (or more) different types of meat products at once (for instance, a chicken patty cannot be made from batter that has milk in it). In addition, genetically engineered meat and grain products are prohibited from consumption. Lastly, I am prohibited from eating fat and blood. (Processed food has a lot of by-products in them (which I am prohibited from eating)). Kosher diets follow all the biblical food laws I have listed above and has special requirements for food preparation and distribution to ensure these laws are followed.

Id. at 110. Rowe further stated that God commanded "my people" to follow the Biblical food laws "because our bodies are His temple—where He dwells in us in the person of the Holy Spirit." Id. at 111. Rowe clarified that a Jewish rabbi did not need to bless his food, "but I do require that my food is biblically 'clean,' is prepared right and is served right." Id. There apparently is not an official "Identity Christianity" doctrine that requires the eating of kosher food; rather, Rowe and a fellow inmate decided that it was required based on their own study of the Bible.[2]

On February 23, 2011, Mark Dodd, the Pendleton Chaplain, wrote Rowe informing him that his request for a kosher diet had been denied by a DOC Central Office committee because his food requirements could be "met by current diet options." Id. at 14. This letter did not specify what the other option would be, but apparently was referring to the vegan option. One of the members of the DOC Central Office committee that denied Rowe's request was Chaplain Stephen Hall. In March 2011, Rowe filed a grievance with Wayne Scaife, a "grievance executive assistant" at Pendleton, which

---

[2] There are different types of kosher food certifications, depending for example on the extent to which a rabbi has verified that the food is kosher. Rowe asserts that he would be satisfied with kosher meals bearing a "K" designation, which means that a rabbi has not verified that the food is kosher.

4

Scaife denied. Id. at 114. Rowe then filed a grievance appeal, which was denied by DOC employee L.A. VanNatta for the stated reason that "your religious preference if [sic] Christian." Id. at 202.

On July 20, 2011, Rowe filed a complaint against Dodd, Hall, Scaife, VanNatta, and Bruce Lemmon, the DOC Commissioner. The complaint specified that Rowe was suing Dodd, Hall, Scaife, and VanNatta in both their official and individual capacities and Lemmon in his official capacity only. Rowe sought compensatory, punitive, and nominal damages against the Defendants, as well as a declaratory judgment and injunction requiring that he be served kosher meals. The complaint invoked RLUIPA and 42 U.S.C. § 1983 for alleged violations of Rowe's constitutional rights under the Free Exercise and Establishment Clauses of the First Amendment to the United States Constitution and the Equal Protection Clause of the Fourteenth Amendment.

On November 28, 2011, Rowe filed a motion for partial summary judgment. The Defendants filed a cross-motion for summary judgment. On April 4, 2012, the trial court denied Rowe's motion for partial summary judgment and granted the Defendants' cross-motion for summary judgment, resulting in dismissal of Rowe's complaint. Rowe now appeals.

**Analysis**

Our standard of review for the grant or denial of a motion for summary judgment is the same as it is for the trial court originally ruling on the motion: whether there is a genuine issue of material fact, and whether the moving party is entitled to judgment as a

5

matter of law. Kroger Co. v. Plonski, 930 N.E.2d 1, 4-5 (Ind. 2010). Summary judgment should be granted only if the designated evidence shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Id. at 5. "All factual inferences must be construed in favor of the non-moving party, and all doubts as to the existence of a material issue must be resolved against the moving party." Id. "The fact that cross-motions for summary judgment are filed does not alter this standard of review." Keckler v. Meridian Sec. Ins. Co., 967 N.E.2d 18, 22 (Ind. Ct. App. 2012), trans. denied.

## I. Scope of Available Remedies under RLUIPA and § 1983

Rowe sued the Defendants under RLUIPA and 42 U.S.C. § 1983. Before turning to the particulars of Rowe's claims against the Defendants, we address the type of relief to which he might be entitled if he was successful in proving his claims and what he would not be entitled to. First, even if Rowe successfully proved a violation of RLUIPA by not being provided a kosher diet, he would not be entitled to recover any money damages on that basis against any of the Defendants. For purposes of federal litigation, suits against state employees acting in their official capacity are treated as suits against the state itself. See Will v. Michigan Dep't of State Police, 491 U.S. 58, 71, 109 S. Ct. 2304, 2312 (1989). It is clear that money damages cannot be imposed against a state or state employees acting in their official capacity in lawsuits alleging violations of RLUIPA. Sossamon v. Texas, -- U.S. --, 131 S. Ct. 1651 (2011). It also is well-settled that "RLUIPA does not authorize any kind of relief against public employees, as opposed

to governmental bodies that receive federal funds and accept the conditions attached by the statute." Vinning-El v. Evans, 657 F.3d 591, 592 (7th Cir. 2011). Thus, regardless of whether Rowe's claims against the Defendants are stated in terms of their official or individual capacities, he cannot recover monetary damages against them even if he proves a violation of RLUIPA. See id. The Defendants concede, however, that Rowe is not precluded from seeking injunctive relief against them under RLUIPA if he proves a violation of that law.

Turning to Section 1983, that statute provides a civil remedy against any "person" who, acting under color of state law, subjects an American citizen to a deprivation of any rights, privileges, or immunities secured by the United States Constitution or federal laws. 42 U.S.C. § 1983. The statute does not provide any remedy against states, state entities, or state officials sued in their official capacity. Lake County Juvenile Court v. Swanson, 671 N.E.2d 429, 433 (Ind. Ct. App. 1996), trans. denied. Rowe, therefore, cannot recover any damages against any of the Defendants under Section 1983 based on any "official capacity" claims.

A government employee acting in his or her individual capacity, however, is a "person" who may be sued under Section 1983. To establish a government employee's liability under Section 1983, a plaintiff must prove: (1) the existence of a constitutionally-protected right; (2) that he or she was deprived of that right; (3) that the defendant intentionally caused the deprivation; and (4) that the defendant acted under the color of state law. McNabola v. Chicago Transit Authority, 10 F.3d 501, 513 (7th Cir.

7

1993). Vicarious liability cannot be imposed under Section 1983 to hold government employees liable for the actions of their subordinates. Ashcroft v. Iqbal, 556 U.S. 662, 676, 129 S. Ct. 1937, 1948 (2009). Additionally, the Seventh Circuit has specifically held that as a general rule, a prison employee who denies a prisoner's grievance complaining about the conduct of another employee faces no Section 1983 liability for that act. See Burks v. Raemisch, 555 F.3d 592, 595-96 (7th Cir. 2009). The grievance examiner has no duty to "rescue" the prisoner from unconstitutional conduct of others. See id. at 596. In other words, a prison employee's denial of a prisoner grievance generally does not make that employee liable for the conduct that led to the grievance in the first place.

Here, the conduct that Dodd engaged in was communicating to Rowe a decision made by others—including Hall—that he would not receive kosher meals. The full extent of Scaife's and VanNatta's involvement in Rowe's case was to deny his first level grievance and his grievance appeal. As a matter of law, none of this conduct is sufficient to support a basis of liability under Section 1983 as none of those three persons were alleged to have personally engaged in any deprivation of Rowe's rights. The only person who might conceivably be subject to damages for a violation of Section 1983 would be Hall, who is the only defendant sued who participated in the original decision not to provide Rowe with kosher meals.[3]

_____

[3] The Seventh Circuit recognized that there could be certain circumstances in which a grievance examiner could face Section 1983 liability; for example, for routinely shredding all grievances without reading

We further note that Rowe's lawsuit alleging violations of the United States Constitution and federal statutes would be governed by the Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(e). See Koger v. Bryan, 523 F.3d 789, 804 (7th Cir. 2008). Under the PLRA, a prisoner cannot recover compensatory or punitive damages for mental or emotional injury caused by constitutional torts or violations of federal statutes by prison officials, unless there has been a showing of prior physical injury. Id. There is no evidence here that Rowe has suffered any physical injury from Hall's actions. Thus, to the extent there is the possibility that Rowe could recover damages against Hall, those damages could only be nominal. See id.

Having delineated the relief to which Rowe could be entitled if he was successful on all of his claims, we conclude that it is unnecessary to address the substance of his constitutional claims. RLUIPA provides greater protection for the exercise of religious practice than exists under traditional First Amendment jurisprudence. Greene v. Solano County Jail, 513 F.3d 982, 986 (9th Cir. 2008). Because the remedies to which Rowe would be entitled are virtually identical under either RLUIPA, or Section 1983 for his constitutional claims, and because courts generally seek to avoid adjudicating constitutional issues if at all possible, we will not review Rowe's Section 1983 constitutional claims. See Borzych v. Frank, 439 F.3d 388, 390 (7th Cir. 2006) (addressing prisoner's claim of infringement of religious liberty solely under RLUIPA and refusing to address his First Amendment claims); see also Koger, 523 F.3d at 801

them, or intervening in the conduct of others. Burks, 555 F.3d at 595. There is no evidence of any such conduct by the grievance examiners in Rowe's case.

(same). Not allowing Rowe to proceed on his Section 1983 constitutional claims will preclude him from recovering nominal monetary damages against Hall, but such preclusion is not a reason for reversing the grant of summary judgment on those claims. See Gewartowski v. Tomal, 125 Ind. App. 481, 486, 123 N.E.2d 580, 582 (1955) (holding that even if there is error in failing to award nominal damages to a plaintiff, such error is not a basis for reversal). Thus, we affirm the grant of summary judgment against Rowe on his constitutional claims under Section 1983.

## II. RLUIPA

RLUIPA prohibits prison systems that receive federal funding, including the DOC, from substantially burdening an inmate's religious exercise unless the step in question is the least restrictive way to advance a compelling state interest. See 42 U.S.C. § 2000cc-1(a); see also Borzych, 439 F.3d at 390. RLUIPA allows the filing of a cause of action to enforce the rights it grants. 42 U.S.C. § 2000cc-2(a). To succeed on a claim under RLUIPA, a prisoner must demonstrate that "he wishes to engage in (1) a religious exercise (2) motivated by a sincerely held belief, which exercise (3) is subject to a substantial burden imposed by the government." Abdulhaseeb v. Calbone, 600 F.3d 1301, 1312-1313 (10th Cir. 2010), cert. denied.

Questions concerning diets for prisoners allegedly mandated by their religious beliefs have generated a voluminous amount of federal litigation. The federal courts of appeal have held that "a prisoner's religious dietary practice is substantially burdened when the prison forces him to choose between his religious practice and adequate

10

nutrition." Nelson v. Miller, 570 F.3d 868, 879 (7th Cir. 2009) (citing Love v. Reed, 216 F.3d 682, 689-90 (8th Cir. 2000) & McElyea v. Babbitt, 833 F.2d 196, 198 (9th Cir. 1987)). The key question in this case, therefore, is whether Rowe's desire for a kosher meal plan was motivated by a sincerely held religious belief, "rather than a preference for the way a given diet tastes, a belief that the preferred diet is less painful for [some] animals, or a prisoner's desire to make a pest of himself and cause trouble for his captors." Vinning-El, 657 F.3d at 594. If Rowe is so motivated, then the DOC is required to provide him with kosher meals, particularly given that the Defendants make no argument that there is a compelling state interest in not providing them.

The sincerity of a person's religious beliefs for purposes of RLUIPA is a question of fact. Beebe v. Birkett, 749 F. Supp. 2d 580, 594 (E.D. Mich. 2010) (citing United States v. Seeger, 380 U.S. 163, 185, 85 S. Ct. 850, 863-64 (1965) (addressing standard of proof for conscientious objector draft status)); see also United States v. Meyers, 95 F.3d 1475, 1482 (10th Cir. 1996) (addressing sincerity standard for predecessor to RLUIPA, the Religious Freedom Restoration Act), cert. denied). Additionally, the question of sincerity is related to a plaintiff's state of mind, and summary judgment is rarely appropriate on such issues. Beebe, 749 F. Supp. 2d at 594-95. To be valid and sincere, a religious belief or practice need not be "compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A). "A personal religious faith is entitled to as much protection as one espoused by an organized group." Vinning-El, 657 F.3d at 593. Also, a particular belief or practice need not be "orthodox" within a person's chosen faith in

11

order to be "sincere," although orthodoxy of a belief or practice (or lack thereof) may be relevant to an inquiry into a prisoner's sincerity. Id. at 593-94. We emphasize, for example, that a prison or court would not be required to agree with a prisoner's asserted "sincere" religious belief that he must regularly eat T-bone steaks, where no such recognized religion required such a diet.

Here, Rowe asserted to the DOC that the kosher meal plan was necessary to comply with his personal religious belief regarding foods prohibited and allowed by the Bible. The DOC already had to provide such meals to persons requesting them for sincere religious beliefs pursuant to Judge Magnus-Stinson's order.[4] Although Rowe, obviously, is not Jewish, Judge Magnus-Stinson's order quite clearly does not apply solely to persons of the Jewish faith. And, as the case law makes abundantly clear, there is no requirement that Rowe be Jewish in order to be entitled to kosher meals, nor does Rowe's belief that he is required to eat such meals have to be orthodox within his chosen religion.[5]

The Defendants do not argue that Rowe is insincere in his belief regarding the necessity of complying with the food laws found in Leviticus and Deuteronomy. However, they contend that the vegan meal option is sufficient to permit Rowe to comply

---

[4] This order was designated as summary judgment evidence by the Defendants.

[5] The Defendants cite Ran-Dav's County Kosher, Inc. v. State, 608 A.2d 1353 (N.J. 1992), for a definition of kosher that focuses primarily on its Jewish origins. As that opinion recognizes, however, "Adherents to certain other faiths, especially those forbidding the consumption of pork, purchase kosher food to comply with their own religious requirements." Id. at 1356. In any event, it is Rowe's understanding and belief as to what kosher means that is dispositive, not what the traditional or "orthodox" definition of that word is.

with those laws. They submitted an affidavit from a representative of the contractor providing vegan meals to the DOC, which established that those meals provide all of a person's necessary nutrition while containing none of the food items Rowe claimed he was forbidden from eating. Regardless, the affidavit does not establish that the vegan meal plan is kosher. In fact, Judge Magnus-Stinson addressed precisely that dilemma in her order. The vegan meal plan, while by itself not including ingredients prohibited by the Biblical food laws, does not guarantee against contamination by prohibited ingredients.[6]

The Defendants essentially contend that Rowe failed to prove that his concept of "kosher" food included the prohibition against any possible contamination of his food by Biblically-prohibited foods. Rowe stated in his application for kosher meals, however, that a kosher diet "has special requirements for food preparation and distribution to ensure these laws are followed," and that he is required to eat food that "is biblically 'clean,' is prepared right and is served right." App. pp. 110-11. At least for purposes of summary judgment, these statements create a genuine issue of material fact as to whether Rowe sincerely believed, for religious reasons, that it was not only the ingredients of his diet that was important but also the manner of its preparation, so as to avoid contamination.

The Defendants have not established as a matter of law that Rowe lacked sincere religious reasons for requesting a kosher diet. Although the sincerity of Rowe's

_____

[6] The Defendants do not argue or direct us to any evidence that this contamination possibility has been eliminated since the time of Judge Magnus-Stinson's order.

adherence to "Identity Christianity" and his need for a kosher diet arguably could be eyebrow-raising, such sincerity, or lack thereof, is a question of fact. See Beebe, 749 F.Supp.2d at 594-95. The Defendants also make no argument that they have a compelling governmental interest in refusing to provide a kosher diet to Rowe. As such, the Defendants were not entitled to summary judgment on Rowe's RLUIPA claims.

For similar reasons, we decline to direct that summary judgment be entered in Rowe's favor on this point, as he requests. We decline to rule, as a matter of law and based on a paper record, that he is definitely sincere in his beliefs. In other words, there is a genuine issue of material fact regarding the sincerity of Rowe's religious belief that he is required to eat only kosher meals that are certified as uncontaminated by "forbidden" foods. We reverse the grant of summary judgment against Rowe on his claims under RLUIPA and remand for further proceedings on those claims.

**Conclusion**

We affirm the grant of summary judgment against Rowe on his claims seeking recovery under Section 1983 for alleged constitutional violations committed by the Defendants. We reverse the grant of summary judgment against Rowe on his RLUIPA claims and remand for further proceedings on those claims, with the understanding that he is entitled only to declaratory and injunctive relief against the Defendants, i.e. requiring that he be provided with kosher meals, if he is successful in proving those claims.

Affirmed in part, reversed in part, and remanded.

VAIDIK, J., and MATHIAS, J., concur.