NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted July 20, 2012[*]
Decided July 22, 2013

**Before**

FRANK H. EASTERBROOK, *Chief Judge*

DIANE P. WOOD, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 12-1532

| | |
|---|---|
| KOFI EASTERLING, *Plaintiff-Appellant,* | Appeal from the United States District Court for the Eastern District of Wisconsin. |
| *v.* | No. 10-CV-779 |
| WILLIAM POLLARD, et al., *Defendants-Appellees.* | Charles N. Clevert, Jr., *Judge*. |

**O R D E R**

Kofi Easterling, a former Wisconsin inmate, believes that Islam commands him to observe the holy month of Ramadan a few weeks earlier than the scheduled observance at the Green Bay Correctional Institution. When the defendant prison administrators denied his request to accommodate his observance of Ramadan in 2010 on dates different from those observed by other Muslim inmates, Easterling sued the officials under the Religious Land Use

---

[*]After examining the briefs and record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and record. *See* FED. R. APP. P. 34(a)(2)(c).

and Institutionalized Persons Act (RLUIPA), 42 U.S.C. §§ 2000cc to 2000cc-5, and under 42 U.S.C. § 1983, alleging violations of his First Amendment rights. The district court granted summary judgment to the defendants, ruling that the prison's policy did not burden Easterling's exercise of religion, and Easterling promptly appealed. We affirm. Easterling's demands for injunctive relief under both RLUIPA and the First Amendment are moot because he is no longer a Wisconsin prisoner. RLUIPA does not provide any damages remedy against the state or state employees, and Easterling's claim for damages against the individual defendants under section 1983 is barred by the defense of qualified immunity.

Ramadan is a month of the Islamic calendar revered by Muslims as the anniversary of the revelation of the first verses of the Quran. During Ramadan, Muslims fast from sunrise to sunset. Inmates at the Green Bay Correctional Institution do not set their own mealtimes, and Muslim inmates must rely on prison administrators to accommodate their Ramadan fast each year by providing an alternate meal schedule after sunset and before sunrise.

Easterling and the defendants disagree about when Ramadan began and ended in 2010. Because Ramadan is based on a lunar month, each year its starting and ending dates shift in relation to the Gregorian calendar (the predominant calendar in the United States). The Wisconsin Department of Corrections employs Muslim chaplains upon whom it relies for Ramadan's starting and ending dates. Chaplain Zakaria Nurdeen served in that position in 2010. He relied on the dates set by the Fiqh Council of North America, a group of Muslim clerics from various sects. He informed the Department of Corrections that Ramadan would begin on August 11, 2010 and end on September 9, 2010. It appears that virtually every Muslim in the world except Easterling observed Ramadan within a few days of those dates.

But Easterling believes (and the defendants have not contested his sincerity) that the 2010 Ramadan began on July 21. He insists that, whatever the cost to the prison, his beliefs had to be accommodated with a special meal schedule. When the defendants denied his demand and urged him instead to sign up for Ramadan observance beginning August 11, Easterling sued prison administrators, a complaint examiner, and a chaplain. He claims in essence both a right to have his religious beliefs accommodated and a right not to be discriminated against because his religious views are unusual or even unique. He sought both injunctive relief and damages for alleged violations of his rights under RLUIPA and the First Amendment.

The defendants moved for summary judgment, arguing that Easterling's demands were not feasible in light of the prison's limited resources. In support they attached an affidavit of Marc Clements, the prison's deputy warden during 2010. Clements explained that religious feasts and fasts create an increased workload for the prison's food service staff. In addition, special outside religious visitors (such as an Imam to celebrate the feast that marks Ramadan's end) require extra security screening and a protective escort. Providing a different date for

Ramadan for each inmate who demanded one would be, in Clement's words, a "huge drain" on the prison's limited resources.

The district court granted summary judgment to the defendants. The court, apparently accepted the defendants' argument that Easterling was wrong about the dates of Ramadan and ruled that Easterling had not shown any burden on his religious practices because the prison used the Ramadan dates calculated by Muslim Imams and permitted Easterling to participate in the observance. Absent some burden on his exercise of religion, the district court ruled, Easterling's claims for injunctive relief under RLUIPA and his damages claims under the First Amendment both failed on the merits.

On appeal Easterling repeats his argument that the defendants violated RLUIPA and the First Amendment when they refused to accommodate his request for a religious fast on different dates than other Muslims. We affirm the district court's judgment without reaching the merits of Easterling's claims under RLUIPA or the First Amendment.

First, Easterling is not entitled to injunctive relief. His release from custody while this appeal has been pending means that his claims for injunctive relief under both RLUIPA and the First Amendment are moot. See *Grayson v. Schuler*, 666 F.3d 450, 451 (7th Cir. 2012); *Vinning-El v. Evans*, 657 F.3d 591, 592 (7th Cir. 2011).

Second, Easterling cannot recover money damages in this case. As the district court noted, RLUIPA does not permit claims for money damages against states or prison officials in their official capacity, see *Sossamon v. Texas*, 131 S. Ct. 1651, 1658–60 (2011), or against prison officials in their individual capacities, see *Vinning-El*, 657 F.3d at 592; *Nelson v. Miller*, 570 F.3d 868, 886–89 (7th Cir. 2009). Thus Easterling is not entitled to any relief under RLUIPA.

We also conclude that Easterling cannot recover money damages from the individual defendants sued under 42 U.S.C. § 1983 for violating his First Amendment rights. The individual defendants are protected by the defense of qualified immunity:

> The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity balances two important interests — the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.

*Pearson v. Callahan*, 555 U.S. 223, 231 (2009); accord, *e.g.*, *Whitlock v. Brueggemann*, 682 F.3d 567, 580 (7th Cir. 2012). To defeat a defense of qualified immunity, a plaintiff must take two steps. First, the plaintiff must first allege and then show facts amounting to an actual violation of his or her constitutional rights. Second, the plaintiff must show that the violation of constitutional rights was clearly established under applicable law at the time and under the circumstances that the defendant official acted. *Pearson*, 555 U.S. at 232. In other words, the plaintiff must show not only that her constitutional rights were violated, but that any reasonable official under the circumstances would have realized that her rights were being violated.

As for the first step, whether Easterling's evidence adds up to a violation of his First Amendment rights is not easy to answer. Recall again that defendants do not challenge the sincerity of Easterling's religious beliefs. The district court's opinion might be read as deciding that Easterling is simply wrong about when Ramadan should be observed, but federal courts are not in the business of determining whether religious beliefs are right or wrong. *E.g.*, *Frazee v. Illinois Dep't of Employment Security*, 489 U.S. 829, 834 (1989) (personal religious beliefs are as protected as those espoused by organized sects); *Grayson*, 666 F.3d at 455; *Vinning-El*, 657 F.3d at 593. Regarding disagreements about the dates of a religious calendar, consider the possibility, for example, of having courts decide whether Christian prisoners should observe Christmas and Easter on the dates observed by the Roman Catholic Church or the different dates observed by the Greek Orthodox Church. That disagreement has lasted well over a millennium, and American federal judges would have no business trying to resolve it.

Another dimension of plaintiff's case is that the defendant officials discriminated against him and in favor of the Muslim mainstream by accommodating the majority's beliefs while doing nothing for him except urging him to follow the majority practice. When prison administrators make an accommodation (such as a nocturnal meal schedule) available for the observance of one faith, the First Amendment requires them to make reasonable efforts to provide equal accommodations for other faiths, including variants of the same faith. See *Vinning-El*, 657 F.3d at 593–94. This issue of religious discrimination in prison poses one of the knottiest problems in First Amendment jurisprudence, since prison officials face significant challenges in maintaining security and safety, as well as substantial constraints on budget and staffing, and balancing these concerns with a wide range of religious practices can be daunting. See, *e.g.*, *Skenandore v. Endicott*, 2006 WL 2587545 (E.D. Wis. Sept. 6, 2006) (evaluating Native American prisoners' claims for religious accommodations including smoking, sweat lodges, periodic group music practice, and religious feasts); *West v. Overbo*, 2005 WL 2176980, at *17-20 (E.D. Wis. Sept. 8, 2005) (holding that prison officials reasonably accommodated demands for observing Ramadan); *Charles v. Verhagen*, 220 F. Supp. 2d 937 (W.D. Wis. 2002) (upholding prison policy allowing each religious faith one religious feast per year).

So it is easy, on the other hand, to empathize with the defendants and the problem posed for them by Easterling's demand for nocturnal meals for him, and only him, for a month. The accommodation of most Muslims during their Ramadan requires substantial effort and expense to change the food service schedule from just a daytime schedule to add food service between sunset and sunrise. As defendants' evidence indicates, making such a change for just one prisoner would involve considerable expense.

In this case we follow the path of *Pearson* and bypass the first qualified immunity question, whether plaintiff can show a violation of his First Amendment rights, and decide only the second question, whether plaintiff can show a violation of his First Amendment rights under clearly established law. The general principles of First Amendment law we have discussed were clearly established in 2010, but the qualified immunity defense turns on whether the application of those principles to the circumstances faced by the defendants was clear at the time. *Anderson v. Creighton*, 483 U.S. 635, 639-40 (1987). In this case, application of the general principles to a demand by just one prisoner for a religious accommodation that would entail such significant challenges and expense for prison officials was not and still is not clearly established. Accordingly, we conclude that defendants are entitled to judgment in their favor on the damages claims under the First Amendment and Section 1983.

Because Easterling is not entitled to any relief under RLUIPA or the First Amendment, the judgment of the district court is **AFFIRMED**.