**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-1101
_____

DONALD D. PARKELL,
                                        Appellant
v.

CHRISTOPHER SENATO, Food Services Administrator, in his individual and official
capacities; MATTHEW DUTTON, Inmate Grievance Coordinator, in his individual and
official capacities; FRANK PENNELL, Chaplain 2, in his individual and official
capacities
_____

On Appeal from the United States District Court
for the District of Delaware
(D.C. Civil No. 1-14-cv-00446)
District Judge: Honorable Sue L. Robinson
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
July 7, 2017

Before: SHWARTZ, COWEN and FUENTES, <u>Circuit</u> <u>Judges</u>

(Opinion filed July 11, 2017)
_____

OPINION[*]
_____

PER CURIAM

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

Donald Parkell appeals pro se from the District Court's orders awarding summary judgment on his claims filed under the First Amendment, the Fourteenth Amendment, and the Religious Land Use and Institutionalized Persons Act (RLUIPA). We will affirm in part, vacate in part, and remand for further proceedings.

I.

Parkell initiated this action in April 2014 against three officials from the James T. Vaughn Correctional Center (VCC)—Food Services Administrator Christopher Senato, Chaplain Frank Pennell, and Inmate Grievance Coordinator Matthew Dutton—alleging that they denied him equal protection of the law, and violated his rights protected by the First Amendment and RLUIPA by failing to timely provide him with a kosher diet.

In February 2014, Chaplain Pennell approved Parkell's change-of-religion request, from "Roman Catholic or Wicca" to Jewish.[1]  About two weeks later, after Parkell had requested a kosher diet in accordance with his change of religion, Senato sent him a memorandum stating that "to receive the kosher meals you need to have a rabbi verify to us that you are an Orthodox Jew."  Parkell submitted a grievance the next day, asking that he be placed on a kosher diet immediately, because eating non-kosher food violated his religious beliefs.[2]  Dutton returned this grievance as unprocessed, advising Parkell to

_____

[1] Parkell has consistently self-identified throughout this litigation as "Jewish/Wicca."  As he explained in his complaint: "a study in historical proofs compelled me to believe in the Jewish interpretation of God, morality, law, nature . . . . [but] one irreconcilable belief [] will not allow a Rabbi to recognize my faith as Jewish, the belief in a dualistic deity."
[2] As Parkell put it: "I must eat kosher and live according to kashruth law [Jewish dietary law].  I am not of Jewish descent, nor have I gone through conversion to satisfy other

direct his request to Pennell. About two weeks later, Parkell submitted a "Religious Diet Participation Agreement"—later signed by security staff on April 17, 2014—indicating that he is "Kosher Practicing."

Under DOC Policy Number 5.3 in effect at that time,[3] it appears that Parkell should have been permitted a kosher diet after submitting this agreement. According to an affidavit filed in the District Court by Senato, however, the DOC at that time "required that those inmates requesting kosher diets be Orthodox Jews," although he did not identify the source of the policy. He also stated that this unidentified policy changed in April 2016, permitting non-Jewish inmates to receive a kosher diet so long as it is part of a sincerely held religious belief.

Meanwhile, Parkell filed this action in April 2014. He later moved to voluntarily dismiss his request for injunctive relief in May 2016 after he was provided a kosher diet consistent with the April 2016 policy change and counsel for Defendants represented that they would continue to provide it. By order entered on July 27, 2016, the District Court granted Defendants' motion for summary judgment in part, concluding that Dutton lacked sufficient personal involvement in this action and that Parkell's RLUIPA claim was moot because he voluntarily dismissed his request for injunctive relief in May 2016.

---

people. I simply believe that eating non-kosher food violates my soul's purpose to celebrate and worship God and the Goddess through rituals demanded within Hebrew texts."

[3] Policy Number 5.3 (effective date July 16, 2012) provides that "[t]he DOC shall provide a religious diet to offenders who have self reported a religious affiliation and submit their written request on the DOC Religious Diet Participation Agreement."

Ultimately, in a December 13, 2016 order, the District Court granted summary judgment on Parkell's remaining equal-protection and First Amendment claims, concluding that Senato and Pennell were entitled to qualified immunity. This timely appeal ensued.

## II.

We have jurisdiction under 28 U.S.C. § 1291. On appeal, Parkell challenges both summary judgment orders.[4] We exercise plenary review over these judgments and apply the same test the District Court utilized—whether the record "shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Giles v. Kearney, 571 F.3d 318, 322 (3d Cir. 2009) (quoting Federal Rule of Civil Procedure 56(a)).

First, we agree with the Appellees that the District Court properly awarded summary judgment in their favor on Parkell's RLUIPA claim. RLUIPA does not allow for the recovery of money damages, see Sharp v. Johnson, 669 F.3d 144, 154 (3d Cir. 2012); in other words, a RLUIPA plaintiff may seek only injunctive or declaratory relief. The District Court properly concluded that Parkell's request for injunctive relief was moot because he had voluntarily dismissed it in May 2016.[5] It also properly concluded

---

[4] Parkell does not contest the District Court's dismissal of Dutton, and thus we will not address it. See United States v. Pelullo, 399 F.3d 197, 222 (3d Cir. 2005) ("It is well settled that an appellant's failure to identify or argue an issue in his opening brief constitutes waiver of that issue on appeal.").

[5] Parkell argues on appeal that the "capable of repetition" exception to mootness applies because Appellees "have shown the probability that they will return to a denial (and evade review)." He explains that when he is moved to another building, "it takes 3 to 5 days for them to provide the diet to the new assigned unit." But a party invoking the

that he could not seek declaratory relief—which is "by definition prospective in nature," CMR D.N. Corp. v. City of Philadelphia, 703 F.3d 612, 628 (3d Cir. 2013), and cannot be issued to address past wrongs.

The District Court resolved Parkell's First Amendment and equal-protection claims[6] on the basis of qualified immunity, which "shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011) (internal citation omitted). The District Court conceded—at least for purposes of summary judgment[7]—that a constitutional violation occurred here.[8] It opined that "the DOC's

---

"capable of repetition" exception must show, among other things, "a reasonable expectation that . . . [he] will be subject to the same action again." Rendell v. Rumsfeld, 484 F.3d 236, 241 (3d Cir. 2007) (internal quotation marks and citation omitted). The "same action" here is the outright denial of kosher meals, and thus Parkell's citation to temporary administrative delays is insufficient to invoke the exception, which is "narrow and available only in exceptional situations." Id. (internal quotation marks and citation omitted).

[6] The District Court analyzed these claims collectively under the Turner v. Safley, 482 U.S. 78 (1987), factors, correctly observing that "Turner is equally applicable to Prisoners' equal protection claims." But the claims are distinct. Parkell predicated his First Amendment claim on the denial of his kosher-diet request, while his equal-protection claim—which he brought "as a class of one"—was predicated on "being required to have Jewish ancestry as one of the possible two ways to be recognized as Jewish." His class-of-one claim fails—and could have been dismissed by the District Court—because he did not allege that he was the only inmate without Jewish ancestry at VCC who sought to be recognized as Jewish. See Renchenski v. Williams, 622 F.3d 315, 338 (3d Cir. 2010). Thus we will address only his First Amendment claim.

[7] Facts "accepted at the summary judgment stage of the proceedings, may not be the actual facts of the case." Edwards v. Shanley, 666 F.3d 1289, 1292 (11th Cir. 2012) (internal quotation marks and citation omitted).

5

religious diet policy in effect prior to April 6, 2016 (restricting kosher diets to only Orthodox Jews), was constitutionally infirm under Turner," but concluded that Senato and Pennell were entitled to qualified immunity, because "given the novel issue plaintiff presented to defendants . . . reasonable officials in their position at the relevant time would have no reason to believe that their conduct was unlawful."

The District Court focused on Parkell's particular beliefs, and essentially asked whether a practitioner of both Judaism and Wicca,[9] like Parkell, enjoyed a clearly established right to a kosher diet, answering this question with a "no." Senato and Pennell frame the question similarly on appeal—they claim that Parkell "practiced a belief that was 'impossible' to define," and argue that, "in the absence [of] case law or [a] framework with which to understand Plaintiff's belief system, and any rights associated with it, Defendants acted reasonably in denying Plaintiff's request for a kosher meal."

We do not doubt that Parkell's belief system—which he characterizes as "Jewish/Wicca"—is novel. But "officials can still be on notice that their conduct violates established law even in novel factual circumstances." Hope v. Pelzer, 536 U.S. 730, 741 (2002). In Vinning-El v. Evans, 657 F.3d 591, 593 (7th Cir. 2011), for instance, a prison chaplain denied a prisoner's request for a vegan diet, which the prisoner had requested

---

[8] The Court recognized that the "First Amendment violation was a continuing one for a two-year period, from April 2014 until April 6, 2016."

[9] The Seventh Circuit, among others, has "recognized that the Church of Wicca occupies a place in the lives of its members parallel to that of more conventional religions." Knowles v. Pfister, 829 F.3d 516, 518 (7th Cir. 2016) (internal quotations marks and citation omitted).

6

because he adhered to Moorish Science, a "personal religious faith" according to the Court of Appeals. The chaplain denied the request on the ground that the tenets of Moorish Science required only a non-pork diet (not a strictly vegan diet), but the prisoner argued that his "religious beliefs require[d] a vegan diet no matter what other members of his sect believe[d]." Id. at 592. The Court of Appeals framed the First Amendment qualified-immunity question as whether the "chaplain [] had evaluated [the prisoner's] sincerity (as opposed to his orthodoxy)[.]" Id. at 594. As Judge Easterbrook explained, "to decide whether [the] chaplain [] has qualified immunity, the district judge must determine whether he reasonably attempted to determine whether [the prisoner] has a sincere belief that his religion requires a vegan diet," id. at 595, and "[i]f he turned [the prisoner] down for the sole reason that Moorish Science does not make a vegan diet a tenet of religious faith, then he violated [the prisoner's] clearly established rights and is not entitled to immunity." Id. at 594.

Based on the record before us, it appears that Senato and Pennell did just this. Even though Parkell advised them, in a March 2014 grievance, that his beliefs required him to eat kosher meals—beliefs the District Court found to be both religious in nature and sincere[10]—they denied his request for more than two years, and did so based on their assessment of the tenets of his belief system (because his belief system did not comport

---

[10] As the Court opined, "a review of the record reflects plaintiff's consistency in expressing his sincere religious beliefs." Senato conceded as much in his affidavit in support of his motion for summary judgment—he stated that Parkell was approved for a kosher diet in April 2016, and, to obtain such a diet, a prisoner must "demonstrate[] that his request for a kosher diet is part of a sincerely held religious belief."

7

with Orthodox Judaism). They are not entitled to qualified immunity under these circumstances.[11]

Accordingly, we will vacate the portion of the District Court's order affording Senato and Pennell qualified immunity on Parkell's First Amendment claim[12] and remand for further proceedings consistent with this opinion. We will affirm the District Court's decision in all other respects. To ultimately prevail on his First Amendment claim, Parkell will still need to persuade a jury that his sincerely held religious beliefs required him to eat a kosher diet. See Vinning-El, 657 F.3d at 595 (7th Cir. 2011); see also Edwards, 666 F.3d at 1292 n.1 ("Our job [in reviewing a district court's award of qualified immunity] is to determine only whether the evidence *can* be read to support . . . qualified immunity, not to predict how the jury will weigh that same evidence.") (emphasis in original).

---

[11] While we "must not define clearly established law at a high level of generality," al-Kidd, 563 U.S. at 742, we have clearly established a prisoner's right to a religiously-motivated diet so long as the views underlying the diet are "(1) sincerely held, and (2) religious in nature, in [his] scheme of things." DeHart v. Horn, 227 F.3d 47, 52 (3d Cir. 2000) (quoting Africa v. Pennsylvania, 662 F.2d 1025, 1029 (3d Cir. 1981). That Parkell's views are novel—or unorthodox—does not matter for purposes of qualified immunity. See Vinning-El, 657 F.3d at 594 ("[S]incerity rather than orthodoxy is the touchstone.").

[12] We do not reach the question of whether Senato and Parkell are entitled to qualified immunity on Parkell's equal-protection claim because that claim fails for other reasons. See supra, n.6.