

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-19-2005

# Henry v. Dept Corr

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-2895

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Henry v. Dept Corr" (2005). *2005 Decisions*. Paper 1159.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/1159

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 03-2895
_____

MICHAEL HENRY,

Appellant

v.

DEPARTMENT OF CORRECTIONS; ROBERT S. BITNER;
ROBERT W. MEYERS, S.C.I.R.; F.J. TENNIS, Deputy of Facility Management;
A.C. BIVIANO, Deputy of Treatment; R.L. KERSTETTER, BBS Unit Manager;
CHARLES MITCHELL; ROBERT W. MEYERS

_____

On Appeal From the United States District Court
For the Middle District of Pennsylvania
(D.C. Civ. No. 02-cv-01246)
District Judge: Honorable William J. Nealon

_____

Submitted Under Third Circuit LAR 34.1(a)
February 23, 2005

BEFORE:  SCIRICA, CHIEF JUDGE, ALITO and SMITH, CIRCUIT JUDGES

(Filed:  May 19, 2005)

_____

OPINION

_____

PER CURIAM

Michael Henry, a Pennsylvania prisoner serving a life sentence, appeals the district court's dismissal of his civil rights action. We will affirm.

I.

According to Henry's complaint, a search of his cell was conducted by a correctional officer. During the search, he was instructed to remove an item from his mouth and to show it to the officer. Henry disobeyed this instruction, threw the item into a toilet, and flushed. According to the officer, Henry had removed a ball of plastic from his mouth. The officer formally charged Henry with prison misconduct, alleging that he had, *inter alia*, disobeyed an order and failed to report contraband. Henry was also placed in administrative custody, where he underwent a drug test—which returned a negative result. Prior to a misconduct hearing, Henry pleaded guilty, admitting the charges against him and indicating that he had kept gambling tickets in the plastic ball.

At the misconduct hearing, Hearing Officer Charles Mitchell concluded that it was "more likely than not" that Henry had kept drugs, not gambling tickets, in the plastic ball. Mitchell observed that inmates typically used plastic to conceal drugs, not something like gambling tickets. See Hearing Report [Exh. C to Complaint], 1. Mitchell noted, too, that the punishment for running a gambling game was only 30 days in disciplinary custody; in the hearing officer's view, it was unlikely that Henry would have risked a 60-day

2

sentence for disobeying an order simply to avoid detection of gambling tickets.  See id.

Based on the determination that the contraband offense had probably involved drugs,

Mitchell ruled that Henry should be restricted to non-contact visitation only.  Mitchell

took administrative appeals of the sanction, but he was unsuccessful.

In his civil rights complaint, Henry alleged that his right to due process was

violated.  Specifically, he alleged that (a) Mitchell erred in using a "more likely than not"

standard when the applicable prison regulation required that decisions be based on a

preponderance of the evidence, (b) he was deprived of prior notice that his offense might

be treated as a drug offense, and (c) there was insufficient evidence that he has possessed

drugs.  See Complaint, 4.  He also alleged that the restriction to non-contact visitation

constituted cruel and unusual punishment under the Eighth Amendment.  The defendants

filed a motion to dismiss, arguing principally that Henry had no liberty interest in prison

visitation.  The district court agreed with the defendants and dismissed the complaint.

Henry timely appealed.

II.

We begin with Henry's due-process claim.  To prevail on such a claim, a plaintiff

must demonstrate that a liberty or property interest was taken from him in a procedurally

deficient manner.  See Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 570-71

(1972).  In this case, the question is whether the restriction of Henry to non-contact

visitation implicates any liberty interest.  A liberty interest may be created in either of two

3

ways. Some liberty interests arise from the Due Process Clause itself, and others arise from state laws and regulations. Sandin v. Conner, 515 U.S. 472, 483-84 (1995). It is entirely clear, however, that the Due Process Clause does not itself guarantee any interest in prison visitation, let alone in any particular form of visitation. Ky. Dep't of Corr. v. Thompson, 490 U.S. 454, 460 (1989) (rejecting any notion that "unfettered visitation is guaranteed directly by the Due Process Clause"); Block v. Rutherford, 468 U.S. 576, 588 (1984) (upholding a blanket prohibition on contact visits to pretrial detainees because it was an "entirely reasonable, nonpunitive response" to legitimate security concerns).

The more difficult question is whether a liberty interest might have been created by Pennsylvania regulations permitting, at least in most situations, contact visitation. In Sandin, the Supreme Court severely restricted the ability of states to create liberty interests benefitting prisoners, holding that the only protectable interests would be in remaining free from "atypical and significant hardship[s] . . . in relation to the ordinary incidents of prison life." 515 U.S. at 484. Courts have held that a loss of visitation privileges is one of the "ordinary incidents" of prison confinement. See, e.g., Phillips v. Norris, 320 F.3d 844, 847 (8th Cir. 2003) (citing cases); see also Ware v. Morrison, 276 F.3d 385, 387 (8th Cir. 2002) (involving an 18-month suspension of a prisoner's ability to be visited by his wife). We agree. It follows, therefore, that Sandin would not permit a conclusion that Pennsylvania's regulations created a liberty interest in a particular type of prison visitation. See also Overton v. Bazzetta, 539 U.S. 126, 137 (2003) (citing Sandin

4

and noting that a limited "withdrawal of visitation privileges . . . [is] a regular means of effecting prison discipline . . . [and] is not a dramatic departure from accepted standards for conditions of confinement").

Henry stresses that a permanent ban on contact visitation is particularly severe in his case because he is serving a life sentence. See Informal Brief, 2 ¶ 3; Complaint, 5.[1] Were Henry facing a lifetime ban on *all* visitation, we might well agree that such a restriction was "atypical and significant . . . in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484; see also Overton, 539 U.S. at 137 (2003) (suggesting that a permanent ban on "*all* visitation privileges" might violate the Eighth Amendment) (emphasis added). Here, however, as we have stressed, Henry's restriction involved only a loss—albeit a permanent loss—of one particular *type* of visitation. It did not affect who could visit him or even how many visits he could receive; it simply regulated the *manner* of his visits. In any event, even if Henry was deprived of a liberty interest, the administrative procedures satisfied due process. His arguments are, in any event, without

---

[1] In the district court, the defendants stated that it was "not entirely clear" whether Henry's sanction was a lifetime ban. Brief in Support of Motion to Dismiss, 5 n.4. They informed the court, however, that the ban could well be permanent if the current misconduct constituted Henry's third drug infraction. See id.; see also Appellees' Brief, 7 n.2 We accept as true Henry's allegation. See, e.g., City of Pittsburgh v. West Penn Power Co., 147 F.3d 256, 262 n.12 (3d Cir. 1998) (on accepting allegations when reviewing a dismissal for failure to state a claim). Our review of the district court's dismissal is *de novo*. Worldcom, Inc. v. Graphnet, Inc., 343 F.3d 651, 653 (3d Cir. 2003). "Dismissal for failure to state a claim is appropriate only if it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Id. (internal quotation and citation omitted).

merit. He contended in the district court that the hearing officer erred by using a "more likely than not" standard when the applicable regulation imposed a preponderance standard. Complaint, 4. A preponderance standard *is* a "more likely than not" standard, however. See BLACK'S LAW DICTIONARY 1182 (6th ed. 1991). Second, we agree with the magistrate judge that the contraband charge was sufficient to give Henry notice that the hearing officer would want to know what the contraband was. See Report and Recommendation, 8-10. Finally, we believe the hearing officer's decision rested on sufficient evidence—the plastic ball, the circumstances of Henry's disposal of the ball, and the hearing officer's reasonable inferences from the evidence before him. See Superintendent v. Hill, 472 U.S. 445, 455-56 (1985) (requiring only that "some evidence" support a hearing officer's decision).

### III.

Henry also argued in the district court that his punishment violated the Eighth Amendment. Complaint, 5. To prevail, he would need to show that the restriction on visitation "violates civilized standards of humanity and decency." Young v. Quinlan, 960 F.2d 351, 359 (3d Cir. 1992). For reasons similar to those we just surveyed, he cannot meet this standard. In Overton, as we have seen, the Supreme Court strongly suggested that a permanent ban on all visitation might constitute cruel and unusual punishment. 539 U.S. at 137. In that same opinion, however, the Court upheld regulations limiting the number and type of persons who could visit prisoners; notably, those prisoners were

already restricted to non-contact visitation. Id. at 130, 133-34. If the regulations in Overton passed muster, the punishment imposed on Henry surely does as well. After all, nothing in Overton suggests that non-contact visitation is, by itself, constitutionally suspect; to the contrary, the Court upheld additional restrictions affecting those subject to non-contact visitation. See id. at 133-34; see also id. at 137 (noting that non-contact visitation is a commonplace feature of prison life). Despite the restriction he faces, Henry can still receive visits from friends, family members, and others; he simply faces a restriction on *how* they may visit. Accordingly, we conclude that Henry's restriction to non-contact visitation, although lengthy, cannot be said to "violate[] civilized standards of humanity and decency." Young, 960 F.2d at 359. We have also considered, and rejected, the possibility that the restriction to non-contact visitation is a punishment so disproportionate to Henry's prison infraction that it violates the exceedingly narrow proportionality principle imposed by the Eighth Amendment. See Ewing v. Calif., 538 U.S. 11, 20-24 (2003).[2]

## IV.

One final matter remains. When it dismissed Henry's complaint, the district court did not grant him leave to amend or consider whether any amendment would be futile. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Shane v. Fauver,

---

[2] We note that the applicable prison policy statement indicates that Henry can, after three years, petition for reinstatement of full visitation privileges. See DC-ADM 812(VI)(K)(4). The possibility of reinstatement undercuts any argument that Henry's restriction to non-contact visitation violates the Eighth Amendment.

7

213 F.3d 113, 117 (3d Cir. 2000). We need not remand the matter to the district court, however, because we cannot conceive of any other viable federal claim that Henry could possibly have brought on these facts. See Grayson, 213 F.3d at 108 (noting that amendment "must be permitted . . . *unless it would be inequitable or futile*") (emphasis added).

As we have seen, Henry did not state either an Eighth Amendment or a due-process claim. We have also considered, and rejected, the possibility that Henry might have a viable claim that the restriction to non-contact visitation violated his First Amendment right of association with family members. It is clear, however, that the prison is acting on a legitimate penological interest when it restricts persons found with contraband, especially drugs, to non-contact visitation. See Overton, 539 U.S. at 132 (setting out the test for determining whether a prison regulation violates the right of association); see also Turner v. Safley, 482 U.S. 78, 89-91 (1987). Simply put, the restriction reduces the chances that contraband will be passed from outside the prison. Likewise, because Henry's punishment does not preclude visits from family members (or anyone else), but simply alters *how* these visits proceed, he retains alternate means to exercise the right of association. See Overton, 539 U.S. at 135. Given these factors, as well as others,[3] we must conclude that Henry has no viable First Amendment claim.

[3] If persons found to have contraband were nevertheless permitted to have contact visitation, a prison might have to expend considerable resources—searching prisoners after every visit, for instance—to deter contraband. See Overton, 539 U.S. at 135 (noting that a court must consider "the impact that accommodation of the asserted constitutional

V.

For the reasons given, Henry's complaint did not state viable due-process or Eighth Amendment claims. We are also satisfied that it would be futile to remand for amendment of the complaint. Accordingly, we will affirm the district court's dismissal of the complaint, including its decision to decline supplemental jurisdiction over Henry's state-law claim for intentional infliction of emotional distress. See 28 U.S.C. § 1367.

---

right would have on guards, other inmates, the allocation of prison resources, and the safety of visitors"). Finally, we see no ready alternative that would alleviate the risk posed by contact visitation with prisoners who have a history of possessing contraband. See id. at 136.