# FOR PUBLICATION



FILED
Jul 17 2013, 5:49 am

CLERK
of the supreme court,
court of appeals and
tax court

APPELLANT PRO SE:

**NATALIE MEDLEY**
Rockville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KATHY BRADLEY**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| NATALIE MEDLEY, | ) | |
| | ) | |
| Appellant-Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 61A01-1209-PL-420 |
| | ) | |
| BRUCE LEMMON, JULIE STOUT, | ) | |
| PAM FERGUSON, STACEY MILNER, | ) | |
| SHERRY WHITE, L.A. VANNATTA, | ) | |
| MIKE PAVESE, VIRGINIA MCCULLOUGH, | ) | |
| | ) | |
| Appellees-Defendants. | ) | |

APPEAL FROM THE PARKE CIRCUIT COURT
The Honorable Sam A. Swaim, Judge
Cause No. 61C01-1205-PL-195

**July 17, 2013**

**OPINION - FOR PUBLICATION**

**BARNES, Judge**

## Case Summary

Natalie Medley appeals the dismissal of her complaint against Bruce Lemmon, Michael Pavese, Julie Stout, Stacy Milner, Pam Ferguson, Virginia McCullough, Sherry White, and L.A. VanNatta (collectively "the Defendants"). We affirm in part, reverse in part, and remand.

## Issues

We restate the issues before us as:

I.   whether the trial court had subject matter jurisdiction to address Medley's claims that the Defendants violated provisions of the Indiana Code;

II.  whether Medley adequately stated any claims against the Defendants under the Indiana Constitution; and

III. whether Medley adequately stated any claims against the Defendants under the United States Constitution.

## Facts

Medley is a prisoner at the Rockville Correctional Facility ("Rockville"). On October 4, 2010, Rockville staff member McCullough recommended that Medley's visitation privileges be modified to non-contact or video-only visitation for a period of six months after Medley was found to have violated prison rules by fleeing or resisting prison staff.[1] This recommendation was agreed to by Milner, the Rockville assistant superintendent, and approved by Stout, the superintendent. On December 16, 2010, the

---

[1] Ordinarily, inmate contact with visitors is limited to holding hands, in addition to briefly embracing, kissing, or shaking hands at the beginning and end of visitation; small children who are unable to sit in a chair may sit in an inmate's lap.

non-contact visitation restriction was extended for an additional year, after Medley was found to have violated a prison rule by hugging another inmate in the bathroom, which was reported to be sexual in nature. Again, McCullough recommended the punishment, with Ferguson this time agreeing to the recommendation as assistant superintendent and Milner approving it as superintendent. These restrictions on visitation expired on March 13, 2012.

The visitation restrictions were imposed pursuant to a rule of the Indiana Department of Correction ("DOC"), No. 02-01-102, providing that "[U]pon recommendation of staff and approval of the Facility Head, an offender may be considered for non-contact or video visits for violations of other disciplinary codes, including but not limited to: . . . Sex related offenses; Physically resisting staff . . . ." App. p. 91. The rule provides that visitation may be restricted for six months for a first offense, twelve months for a second offense, and permanently for a third offense.[2] Furthermore, the rule, which we refer to as the "three strikes" policy, states that "[t]hese restrictions shall not be considered as a part of any disciplinary action taken against the offender for guilty findings for any of the indicated offenses; but, shall be an administrative action in addition to any disciplinary action taken against the offender." Id. at 93.

Medley filed grievances regarding these visitation restrictions. They were initially denied by White, a grievance specialist at Rockville, and subsequently by VanNatta, a

---

[2] After a "permanent" contact visitation revocation, a prisoner may petition after two years to have contact visitation privileges reinstated.

DOC Central Office grievance specialist. Medley also wrote to Pavese, DOC Policy Manager, regarding the restriction of her visitation, and she claimed that she was being treated unfairly as compared to other inmates who committed similar conduct violations. After the restriction of her visitation, Medley was temporarily transferred to the Indiana Women's Prison ("IWP") from January through May 2011.

On May 7, 2012, Medley filed a "Civil Rights Complaint" against Lemmon (the DOC Commissioner), Pavese, Stout, Milner, Ferguson, McCullough, White, and VanNatta. Id. at 16. She stated that she was bringing the suit "pursuant to 42 USC section 1983" and alleged violations of the United States and Indiana Constitutions and Indiana statutes in connection with the restriction of her visitation privileges. Id. Medley also alleged that her temporary transfer to IWP was done in retaliation for her filing of multiple grievances and that she has continued to be retaliated against since her transfer back to Rockville, such as by being placed in an "observation" unit and by restriction of access to the law library. She also claimed that the visitation restrictions were imposed in personal retaliation for her filing of grievances, and that the restrictions were also generally related to a misleading survey conducted of inmates that labeled Rockville one of the worst prisons in America for prison rape. Medley sought injunctive relief prohibiting enforcement of the DOC's "three strikes" policy regarding non-contact visitation, as well as monetary damages against the Defendants.

On July 5, 2012, the Defendants filed a motion to dismiss Medley's complaint for failure to state a claim upon which relief could be granted. The trial court granted this motion in its entirety on August 13, 2012. Medley now appeals.

**Analysis**

We review de novo a ruling on a motion to dismiss a civil complaint for failure to state a claim pursuant to Indiana Trial Rule 12(B)(6). Putnam County Sheriff v. Price, 954 N.E.2d 451, 453 (Ind. 2011). "Such a motion tests the legal sufficiency of a claim, not the facts supporting it." Caesars Riverboat Casino, LLC v. Kephart, 934 N.E.2d 1120, 1122 (Ind. 2010). "That is to say, it tests whether the allegations in the complaint establish any set of circumstances under which a plaintiff would be entitled to relief." Price, 954 N.E.2d at 453. In ruling on a Rule 12(B)(6) motion, courts are required to view the complaint in the light most favorable to the non-moving party and with every inference in its favor. Id.

Before turning to the merits of Medley's particular claims, we address her argument that the trial court should not have dismissed her complaint upon the Defendants' motion because it had already declined to dismiss the complaint under Indiana Code Section 34-58-1-2(a)(2). That statute provides, "A court shall review a complaint or petition filed by an offender and shall determine if the claim may proceed. A claim may not proceed if the court determines that the claim . . . is not a claim upon which relief may be granted . . . ." We have noted that this statute "is akin to a legislative interpretation of Indiana Trial Rule 12(B)(6), a rule which has given judges in civil cases

5

the authority 'to consider a case in its early stages and, taking everything the plaintiff has alleged as true, determine whether it can proceed.'" Guillen v. R.D.C. Mail Clerk, 922 N.E.2d 121, 122-23 (Ind. Ct. App. 2010) (quoting Peterson v. Lambert, 885 N.E.2d 719, 720 (Ind. Ct. App. 2008)). The statute provides the same authority as Trial Rule 12(B)(6) in civil cases involving prisoners acting pro se, but "without requiring a motion by the defendant to trigger the determination." Id. at 123.

Although Indiana Code Section 34-58-1-2(a)(2) and Trial Rule 12(B)(6) are very similar, we see nothing in the statute that would either preclude a defendant from moving to dismiss a pro se prisoner's complaint under Trial Rule 12(B)(6) or a trial court from granting such a motion. Certainly, nothing in the statute indicates that permitting a pro se offender's civil lawsuit to proceed is a final, irrevocable ruling that the complaint is legally sufficient. Additionally, it is well-settled that a trial court has the inherent authority to reconsider any previous rulings it has made, so long as the case remains pending (or "in fieri"). Yeager v. McNanama, 874 N.E.2d 629, 639 (Ind. Ct. App. 2007). Thus, nothing prohibited the trial court here from reconsidering its prior decision to allow Medley's lawsuit to proceed upon the presentation of a motion to dismiss and supporting argument by the Defendants.

We also note that the State argues that Medley's appeal is moot to the extent it claims she seeks injunctive relief regarding her six-month and one-year visitation restrictions, which expired on March 13, 2012. "Generally, an issue is deemed to be moot when the case is no longer live and the parties lack a legally cognizable interest in

6

the outcome of its resolution or where no effective relief can be rendered to the parties." Lake County Bd. of Elections and Registration v. Copeland, 880 N.E.2d 1288, 1291 (Ind. Ct. App. 2008). However, it does not appear to us that Medley is requesting any kind of injunctive relief with respect to her personal visitation restrictions, as opposed to monetary damages for them having been imposed. She does seek injunctive relief with respect to barring the DOC from generally and prospectively enforcing its "three strikes" visitation policy, and that claim is not moot, nor are her claims seeking damages.

## I. Statutory Claims

We first turn to Medley's claims that the "three strikes" DOC visitation policy, generally and as applied to her, violates two statutes governing prison discipline and visitation, Indiana Code Sections 11-11-5-4 and 11-11-3-9. She notes that Indiana Code Section 11-11-5-4(4) states in part that the DOC "may not impose the following as disciplinary action: . . . Restrictions on clothing, bedding, mail, visitation, reading and writing materials, or the use of hygienic facilities, except for abuse of these." She contends that the "three strikes" policy violates this statute because it is used to restrict prisoner visitation for conduct offenses that have nothing to do with visitation and that her visitation was in fact restricted on the basis of conduct offenses that were unrelated to any "abuse" of her visitation.

Both the trial court and this court are unequivocally precluded from considering Medley's claims regarding Section 11-11-5-4. In Blanck v. Indiana Department of Correction, 829 N.E.2d 505 (Ind. 2005), our supreme court addressed a prisoner lawsuit

7

alleging that DOC discipline of him violated several statutes, including Section 11-11-5-4.[3] The court first noted that, while it assumed the statutes conferred substantive rights upon inmates, none of them contained "any provision suggesting that inmates have a right to enforce any such rights in court." Blanck, 829 N.E.2d at 509. The court also declined to find that the Legislature impliedly intended to confer a private right of action to enforce any of the statutes. Id. at 510. The court also noted that the Indiana Administrative Orders and Procedures Act, which provides the exclusive means for judicial review of agency action, expressly excludes from its scope any "agency action related to an offender within the jurisdiction of the department of correction." Id. (quoting Ind. Code § 4-21.5-2-5(6)). In sum, the court held that Section 11-11-5-4 did not confer subject matter jurisdiction upon courts to review alleged violations of it. Id. Given this clear statement of law, the trial court correctly dismissed all claims related to that statute because it lacked subject matter jurisdiction to consider them. See id. at 508 (noting trial court dismissed complaint for failure to state a claim under Trial Rule 12(B)(6), but that it actually lacked subject matter jurisdiction, which falls under Trial Rule 12(B)(1)); see also Zimmerman v. State, 750 N.E.2d 337, 338 (Ind. 2001) (holding prisoner could not challenge non-contact visitation restriction based on alleged violation of Section 11-11-5-4(4) by the DOC).

---

[3] The other statutes were Indiana Code Sections 11-10-1-7, 11-11-5-5, 11-11-5-6, and 11-11-5-7.

The Blanck court was not asked to decide whether a prisoner could obtain judicial review of a claim arising out of an alleged violation of Indiana Code Section 11-11-3-9. Medley claims violations of subsection (a) and (c) of that statute, which provide:

> (a) A person may be prohibited from visiting a confined person, or the visit may be restricted to an extent greater than allowed under section 8 of this chapter, if the department has reasonable grounds to believe that the visit would threaten the security of the facility or program or the safety of individuals.

> \* \* \* \* \*

> (c) If the department prohibits or restricts visitation between a confined person and another person under this section, it shall notify the confined person of that prohibition or restriction. The notice must be in writing and include the reason for the action, the name of the person who made the decision, and the fact that the action may be challenged through the grievance procedure.

In a case decided by this court twelve days before Blanck was decided, this court addressed, on the merits, a prisoner's claim that a DOC policy regarding visitation by minors violated subsection (b) of Section 11-11-3-9. See Doe v. Donahue, 829 N.E.2d 99 (Ind. Ct. App. 2005). Our supreme court originally granted transfer in Doe but later rescinded that grant, over the dissent of two justices, thus reinstating Doe as precedent.

To the extent Medley seems to suggest Doe would permit her to bring a private cause of action for judicial review of her specific claims regarding alleged violations of subsections (a) and (c) of Section 11-11-3-9, we disagree. Doe did not address a situation involving prison discipline. Blanck and subsequent cases have made it clear that claims

9

of prison discipline exceeding statutory limits cannot be subjected to judicial review.[4]

See, e.g., Israel v. Indiana Dep't of Correction, 868 N.E.2d 1123, 1124 (Ind. 2007). Additionally, in Kimrey v. Donahue, 861 N.E.2d 379, 383 (Ind. Ct. App. 2007), this court extended Blanck's holding to bar a lawsuit claiming that a DOC regulation regarding printed materials violated Indiana Code Section 11-11-3-6, even though it was not strictly speaking a disciplinary matter. The policy Medley wishes to challenge and the restriction of her visitation are prison disciplinary matters and, in any event, this is a type of claim we held could not be subjected to judicial review in Kimrey even if it was not strictly a prison disciplinary matter. As with the claim arising under Section 11-11-5-4, the trial court lacked subject matter jurisdiction to consider the claim under Section 11-11-3-9, and it was correctly dismissed.[5]

## II. State Constitutional Claims

Next, we address Medley's arguments based on the Indiana Constitution. First, she contends that the "three strikes" policy violates Article 1, Section 12 of that

---

[4] A claim that prison discipline exceeded constitutional, as opposed to statutory, limits is subject to judicial review. See Ratliff v. Cohn, 693 N.E.2d 530, 548 (Ind. 1998); Smith v. Indiana Dep't of Corr., 871 N.E.2d 975, 984 (Ind. Ct. App. 2007), trans. denied, cert. denied.

[5] In Malone v. Butts, 974 N.E.2d 1025 (Ind. Ct. App. 2012), trans. denied, another panel of this court addressed the validity of the "three strikes" policy under Indiana Code Sections 11-11-5-4(4) and 11-11-3-9 on the merits after concluding that subject matter jurisdiction existed to address the claim because the prisoner had challenged the policy via a petition for writ of mandate; the panel ultimately held that the "three strikes" policy did not violate the statutes. We respectfully disagree that courts have subject matter jurisdiction to address claims of violations of Indiana Code Sections 11-11-5-4 and 11-11-3-9 under any circumstances. In Zimmerman, the challenge to Section 11-11-5-4(4) had been brought by a petition for writ of mandate, and the court held, "Regardless of the procedural vehicle employed-whether mandate to compel compliance with statute or direct judicial review of a prison disciplinary decision," prisoners had no right to judicial review of prison disciplinary actions. Zimmerman, 750 N.E.2d at 338.

Constitution, by failing to provide adequate opportunity for a hearing and due process before a prisoner may be limited to non-contact visitation for the remainder of their incarceration.[6] Article 1, Section 12 provides: "All courts shall be open; and every person, for injury done to him in his person, property, or reputation, shall have remedy by due course of law. Justice shall be administered freely, and without purchase; completely, and without denial; speedily, and without delay." Our supreme court, however, has held that with respect to prison disciplinary procedures and actions, "'The current system of administrative review by policy makers and executive officers within the correction department establishes a fair procedure to resolve disputes, one adequate under due process.'" Zimmerman v. State, 750 N.E.2d 337, 338 (Ind. 2001) (quoting Hasty v. Broglin, 531 N.E.2d 200, 201 (Ind. 1988)).

Medley seems to argue that Zimmerman does not apply here because the DOC has decided to label restriction of visitation under the "three strikes" policy as an "administrative action" to be imposed in addition to any discipline for underlying misconduct, but not "discipline" in and of itself; thus, Medley contends, she is not entitled to the full range of due process protections under the "three strikes" policy because it falls outside of normal DOC disciplinary process channels. This does not change the fact, however, that Medley still has the full range of due process protections

---

[6] Medley's argument on the Indiana Constitution issues is short, and she attempts to refer us to additional argument she made in a brief filed with the trial court. However, "a party may not present an argument entirely by incorporating by reference from a source outside the appellate briefs." Bigler v. State, 732 N.E.2d 191, 197 (Ind. Ct. App. 2000), trans. denied. Our review of these issues is limited to the arguments Medley has made in her brief filed with this court.

11

with respect to challenging an initial misconduct finding that could lead to a visitation restriction, and she also can challenge via grievance a decision to restrict visitation. Thus, the current grievance procedures by which Medley (or any other prisoner) can challenge a restriction on her visitation under the "three strikes" policy satisfies due process or "due course of law" concerns. Relatedly, the "Open Courts Clause" of Article 1, Section 12, confers no right to judicial review of prison disciplinary actions. See Blanck, 829 N.E.2d at 511.

Medley also argues that the "three strikes" policy, both generally and as applied to her and other inmates, violates Article 1, Section 23 of the Indiana Constitution. Article 1, Section 23 provides: "The General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities, which, upon the same terms, shall not equally belong to all citizens." The Defendants argue in part that this provision has no application in this case because Medley is challenging prison discipline regulations of the DOC, not any act of the General Assembly. Although Article 1, Section 23 does explicitly refer to acts of the General Assembly, our supreme court has clearly held that this provision governs "not only state statutes, but also the enactments and actions of county, municipal, and other governmental agencies and their equivalents." Dvorak v. City of Bloomington, 796 N.E.2d 236, 238 (Ind. 2003). Also, our supreme court has never given any indication that prisoners are categorically precluded from challenging prison discipline regulations and decisions as violating Article 1, Section 23. Cf. Ratliff v. Cohn, 693 N.E.2d 530, 545-46

12

(Ind. 1998) (addressing on merits but ultimately rejecting claim that placement in adult prison as opposed to juvenile facility violated Article 1, Section 23).

Plaintiffs may raise either facial or as applied challenges under Article 1, Section 23. See Martin v. Richey, 711 N.E.2d 1273, 1279 (Ind. 1999). Medley suggests that the "three strikes" policy on its face treats inmates found guilty of consensual sex-related misconduct differently from inmates found guilty of other, more egregious misconduct, and that such differential treatment is not justified by institutional security concerns. However, the policy requires imposition of non-contact visitation for a number of other prison offenses, including possession, use, or distribution of controlled substances, possession of escape materials, possession of a deadly weapon, unauthorized possession or altering of an electronic device, and having incurred multiple tobacco-related offenses. For "sex related offenses," imposition of non-contact visitation "may be considered" but is not required. App. p. 91. Such imposition also "may be considered" for batteries, resisting staff, possession, use, or making of intoxicants, escape or attempted escape, trafficking, and visiting room violations. Thus, the "three strikes" policy on its face does not single out misconduct for consensual sexual conduct for harsher or different treatment than other offenses. A number of offenses are covered by the policy, with many of them being subjected to harsher treatment than sex-related offenses. Medley has failed to state a claim that the "three strikes" policy facially violates Article 1, Section 23.

Medley also alleges that, in practice, those found guilty of consensual sex-related offenses are subjected to the visitation restrictions while those found guilty of other

13

misconduct are not. Medley's own complaint, however, contradicts this assertion. Namely, she alleged that the first, six-month imposition of non-contact visitation resulted from a finding that Medley had resisted staff, <u>not</u> that she had committed a sex-related offense. Although Medley's complaint elsewhere asserts that "inmates guilty of consensual, non-violent sex-related conduct offenses are treated differently than all other similarly situated inmates at IDOC facilities," we need not ignore the undisputed factual assertion in her complaint to the contrary, namely that she herself was subjected to non-contact visitation because of a non-sex-related offense. App. p. 24. As such, we conclude Medley has failed to state a claim that the "three strikes" policy, as applied to her and others found to have committed sex-related offenses, violates Article 1, Section 23.

### III. Federal Constitutional Claims

Finally, we address Medley's allegations that the Defendants violated her rights under the United States Constitution through implementation of the "three strikes" policy.[7] These claims are governed by 42 U.S.C. § 1983. Section 1983 provides a civil remedy against any "person" who, acting under color of state law, subjects an American citizen to a deprivation of any rights, privileges, or immunities secured by the United States Constitution or federal laws. <u>Rowe v. Lemmon</u>, 976 N.E.2d 129, 134 (Ind. Ct.

---

[7] It appears that the propriety of the "three strikes" policy under the United States Constitution has been repeatedly and unsuccessfully challenged in Indiana federal district courts, albeit in cases resolved by unpublished decisions. <u>See, e.g.</u>, <u>Bronson v. Buss</u>, 2010 WL 1418391 (N.D. Ind. April 5, 2010); <u>Thrash v. Levenhagen</u>, 2009 WL 3617682 (N.D. Ind. Oct. 29, 2009); <u>Crawford v. Levenhagen</u>, 2009 WL 2905469 (N.D. Ind. Sept. 9, 2009).

14

App. 2012), <u>trans. denied</u>. "The statute does not provide any remedy against states, state entities, or state officials sued in their official capacity." <u>Id.</u> Similarly, there is no such thing as vicarious liability under Section 1983. <u>Id.</u>

To establish a claim against a government employee acting in his or her individual capacity, a plaintiff must prove: "(1) the existence of a constitutionally-protected right; (2) that he or she was deprived of that right; (3) that the defendant intentionally caused the deprivation; and (4) that the defendant acted under the color of state law." <u>Id.</u> Generally, a prison employee's denial of a prisoner grievance does not make that employee liable for the conduct of another prison employee that led to the grievance in the first place. <u>Id.</u> Exceptions to this rule might exist if, for example, a grievance examiner never actually read submitted grievances, or if the examiner improperly intervened in the conduct of others. <u>Id.</u> at 134 n.3.

Medley claims a violation of her Due Process Clause rights under the Fourteenth Amendment with respect to the manner in which visitation restrictions are imposed under the "three strikes" policy, in that such restrictions are not treated as "discipline" according to the DOC and the decision whether to impose such restrictions is not subject to the ordinary DOC disciplinary and grievance procedures. We have already addressed this issue in the context of Medley's claim under the Due Course of Law provision of Article 1, Section 12 of the Indiana Constitution, having noted that Medley still enjoys the full due process protections associated with challenging whatever underlying misconduct is used to support a visitation restriction.

15

Additionally, the United States Supreme Court has held that the type of liberty interests afforded state prisoners that are protected by the Due Process Clause generally is limited to a freedom from restraint that "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 483-484, 115 S. Ct. 2293, 2300 (1995). In other words, procedural due process under the Fourteenth Amendment is not required with respect to prison disciplinary actions unless the discipline represents "a dramatic departure" from what might normally be expected to be the basic conditions of a prisoner's sentence. Id. at 485, 487, 115 S. Ct. at 2301, 2302. We conclude that here, the change in visitation provided by the "three strikes" policy, from allowing some (albeit limited) physical contact with visitors to no physical contact at all, is not such a draconian punishment that it is a "dramatic departure" from the normal conditions of serving a prison sentence, which necessarily already entails a significant curtailment on interactions with those outside prison. As such, procedural due process protections do not apply to the "three strikes" policy. See Henry v. Dep't of Corr., 131 Fed. Appx. 847, 849-50 (3rd Cir. 2005) (holding state law permitting prisoners to have contact visitation in most circumstances did not create liberty interest in that type of visitation and its revocation was not subject to due process protections).

The Sandin court noted that even if procedural due process does not apply to a prisoner's claim of improper discipline, the prisoner may still make claims under the First and Eighth Amendments of the Constitution, as well as the Equal Protection Clause of

16

the Fourteenth Amendment. Sandin, 515 U.S. at 487 n.11, 115 S. Ct. at 2302 n.11. Medley does argue in part that the "three strikes" policy and its restriction on visitation unconstitutionally infringes upon her "right of association" under the First Amendment. It is true that courts must recognize legitimate constitutional claims of prison inmates. Turner v. Safley, 482 U.S. 78, 84, 107 S. Ct. 2254, 2259 (1987). Conversely, courts are reluctant to intervene in prison disciplinary matters because "[r]unning a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government." Id. at 84-85, 107 S. Ct. at 2259. Thus, when a prisoner challenges a prison regulation, he or she must establish that the regulation burdens the exercise of a fundamental constitutional right and that the regulation is not reasonably related to legitimate penological objectives, or that the regulation represents an exaggerated response to those concerns. Id. at 87, 107 S. Ct. at 2260-61.

Medley alleges in her complaint that the "three strikes" policy, in particular as applied as a punitive response to consensual sexual activity between inmates, is an exaggerated response to prison security concerns and serves no legitimate penological objective. However, assuming Medley has a fundamental constitutional right to enjoy continued visitation with outsiders, she fails to cite any authority or make cogent argument for the proposition that there is a fundamental constitutional right to have visitation in which some physical contact is allowed, which is the only limitation imposed by the "three strikes" policy. The Supreme Court has noted that "freedom of association

17

is among the rights least compatible with incarceration. . . . Some curtailment of that freedom must be expected in the prison context." Overton v. Bazzetta, 539 U.S. 126, 131, 123 S. Ct. 2162, 2167 (2003). Additionally, this court has noted that the DOC "is specifically empowered to place restrictions on visitation to maintain security, promote safety and retain manageability of correctional institutions." Indiana Dep't of Corr. v. Stagg, 556 N.E.2d 1338, 1342 (Ind. Ct. App. 1990). A number of courts have held that prisoners do not have a constitutional right to contact visitation, or to any particular form of visitation. See Berry v. Brady, 192 F.3d 504, 508 (5th Cir. 1999) (holding that manner in which prisoner visitation privileges are exercised are subject to the discretion of prison officials); Thorne v. Jones, 765 F.2d 1270, 1274 (5th Cir. 1985) (holding prisoners have no First Amendment right to "physical association" with visitors), cert. denied; Barnett v. Centoni, 31 F.3d 813, 817 (9th Cir. 1994); Peterson v. Shanks, 149 F.3d 1140, 1145 (10th Cir. 1998) (citing Kentucky Dep't of Corr. v. Thompson, 490 U.S. 454, 460, 109 S. Ct. 1904, 1908 (1989)). Especially in the absence of any cogent argument by Medley to the contrary, we conclude that, as an incarcerated prisoner, she does not have a First Amendment "right to association" that includes the right to contact visitation. As such, we decline to apply the Turner balancing test to her claim regarding the "three strikes" policy.

Medley also claims that the policy and its application to her violate the Equal Protection Clause of the Fourteenth Amendment. This claim parallels her claim under Article 1, Section 23 of the Indiana Constitution, and we reject it for the same reason:

18

inadequate pleading of actual differential treatment under the "three strikes" policy. To the extent Medley claims she personally, as a "class of one," was singled out for harsher treatment by the Defendants, we believe that claim is more appropriately addressed solely with respect to her claim of improper retaliation. This is because when a prisoner claims an Equal Protection violation by prison officials, he or she must show that the discrimination was intentional or deliberate. Faver v. Bayh, 689 N.E.2d 727, 730-31 (Ind. Ct. App. 1997). Also, when an Equal Protection claim is based on alleged "selective enforcement" of regulations by government officials, a plaintiff must show that he or she was selectively treated compared with others similarly situated, and that the selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure the plaintiff. LeClair v. Saunders, 627 F.2d 606, 611 (2nd Cir. 1980), cert. denied. Medley's only allegation of impermissible considerations or intentional conduct boils down to her claim that the Defendants were retaliating against her.

We therefore address that claim: that the Defendants retaliated against Medley for exercising her First Amendment rights to free speech and to seek redress of grievances. Medley states in her complaint that, in September 2010, she filed three grievances complaining about visitation and recreation limitations while being housed in segregated secure quarters. She alleges that the October 2010 restriction on her visitation was imposed in retaliation for those grievances, and that the December 2010 visitation restriction was imposed for the initial grievances as well as her grievances related to the

19

October 2010 visitation restriction. She further alleges that, in January 2011, she was transferred to IWP in retaliation for her filing of grievances and letters that she wrote to the DOC Central Office complaining about her visitation restrictions; she was transferred back to Rockville in May 2011.

It is well-settled by the federal courts that a prisoner may sue prison officials under 42 U.S.C. § 1983 when they are alleged to have retaliated against a prisoner's exercise of First Amendment rights. See, e.g., Franco v. Kelly, 854 F.2d 584, 590 (2nd Cir. 1988); Bridges v. Gilbert, 557 F.3d 541, 546 (7th Cir. 2009); Peterson, 149 F.3d at 1144. The various federal circuits state the requirements of a First Amendment retaliation claim slightly differently, though they are all roughly similar. The Seventh Circuit has held that in order to prevail on such a claim, a prisoner must show that: (1) he or she engaged in activity protected by the First Amendment; (2) he or she suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the prison official's decision to take the retaliatory action. Bridges, 557 F.3d at 546. The third element implies that there must be a causal connection between the protected activity and the deprivation or "adverse action" taken by a prison official. See Dawes v. Walker, 239 F.3d 489, 492 (2nd Cir. 2001), overruled on other grounds by Swierkiewicz v. Sorema N.A., 534 U.S. 506, 122 S. Ct. 992 (2002); Peterson, 149 F.3d at 1144 (holding that a prisoner must prove "but for" retaliatory motive, disciplinary action would not have taken place).

20

There is no doubt that Medley has adequately alleged the first two elements of a First Amendment retaliation claim. It is generally accepted that a prisoner has a First Amendment right to pursue grievances and that prison officials may not retaliate against a prisoner for exercising that right. See Graham v. Henderson, 89 F.3d 75, 80 (2nd Cir. 1996); Rhodes v. Robinson, 408 F.3d 559, 567 (9th Cir. 2005). Thus, Medley engaged in protected activity in her filing of grievances.[8] As for whether Medley suffered a deprivation or adverse action, the imposition of visitation restrictions against a prisoner may support a retaliation claim. See Powers v. Snyder, 484 F.3d 929, 933 (7th Cir. 2007). The transfer of a prisoner to another facility also may support a retaliation claim. See Hill v. Lappin, 630 F.3d 468, 473 (6th Cir. 2010).

The closer question is whether Medley adequately alleged that her visitation restrictions and subsequent prison transfer were causally related to her protected First Amendment activity, or in other words whether the discipline was motivated by her activity. We note that the Eighth and Eleventh Circuits both hold that "an inmate cannot state a claim of retaliation for a disciplinary charge involving a prison rule infraction when the inmate was found guilty of the actual behavior underlying that charge after being afforded adequate due process." O'Bryant v. Finch, 637 F.3d 1207, 1215 (11th Cir. 2011), cert. denied; see also Orebaugh v. Caspari, 910 F.2d 526, 528 (8th Cir. 1990). It does not appear, however, that most other circuits have adopted an iron-clad rule that

---

[8] To the extent Medley also claims retaliation based upon a prison rape survey that she and others at Rockville completed, her argument on this point lacks cogency because it fails to explain why the Defendants would have used the survey, completed by all Rockville inmates, to single Medley out for harsher treatment.

21

discipline imposed for a non-falsified rule violation by a prisoner automatically precludes a retaliation action based on the discipline. Again, as stated by the Seventh Circuit, a prisoner need only establish that protected activity was "at least" a motivating factor in the prison official's decision to take the retaliatory action, not that it must be the sole motivating factor. Bridges, 557 F.3d at 546. Granted, it may be difficult to prove retaliation when, in fact, a prisoner has committed a rule violation and discipline has subsequently been imposed. It is not clear, however, that a retaliation claim should automatically be defeated in such a situation, especially where the decision of what punishment to impose on a prisoner for a rules infraction is entirely discretionary. As the Fifth Circuit has stated:

> We emphasize that our concern is whether there was retaliation for the exercise of a constitutional right, separate and apart from the apparent validity of the underlying disciplinary report. An action motivated by retaliation for the exercise of a constitutionally protected right is actionable, even if the act, when taken for a different reason, might have been legitimate.

Woods v. Smith, 60 F.3d 1161, 1165 (5th Cir. 1995) (citing, in part, dissenting opinion in Orebaugh), cert. denied. See also Rauser v. Horn, 241 F.3d 330, 334 (3rd Cir. 2001) (declining to follow Eighth Circuit and holding that, in a First Amendment retaliation claim brought by a prisoner, the prisoner must establish that exercise of constitutional right was "a substantial or motivating factor" in a disciplinary decision, which prison officials may rebut with proof that they would have imposed same discipline absent

22

protected activity by prisoner) (citing <u>Mount Healthy Bd. of Ed. v. Doyle</u>, 429 U.S. 274, 97 S. Ct. 568 (1977)).

Here, Medley does not deny that she committed the offense of resisting staff, which was the basis for her first visitation restriction. She does, however, allege that the second offense for touching another inmate in the restroom was not sexual in nature, but that it was construed that way by prison staff so that it would qualify as a "sex offense" under the "three strikes" policy. Additionally, that policy provides that for either resisting or "sex offenses," the decision whether to impose non-contact visitation is a discretionary matter. Finally, there is no clear reason in the record currently before us for Medley's temporary transfer to IWP. We conclude that if prison officials in fact decided to exercise their discretion so as to punish Medley more harshly by revoking her contact visitation privileges and to transfer her to IWP in retaliation for her protected activity and they would not have done so if she had not engaged in that activity, it would be sufficient to state a First Amendment retaliation claim.

We also note that because "the ultimate fact of retaliation for the exercise of a constitutionally protected right rarely can be supported with direct evidence of intent that can be pleaded in a complaint, courts have found sufficient complaints that allege a chronology of events from which retaliation may be inferred." <u>Benson v. Cady</u>, 761 F.2d 335, 342 (7th Cir. 1985) (citation omitted). Similarly, the Second Circuit finds there to be sufficient pleading of causation in a prisoner retaliation case "where the adverse action occurs soon after the protected activity." <u>Mateo v. Fischer</u>, 682 F. Supp.2d 423,

23

435 (S.D. N.Y. 2010) (citing <u>Colon v. Coughlin</u>, 58 F.3d 865, 872 (2nd Cir. 1995)).  The chronology of events as listed in Medley's complaint—i.e., the close proximity in time between her grievance filings and her visitation restrictions and IWP transfer—is sufficient to permit an inference of retaliation.  We emphasize that whether Medley will be able to support her retaliation claim at trial, or possibly even on summary judgment, is a different matter altogether and one on which we have no opinion.  But for purposes of a motion to dismiss, she has adequately stated a First Amendment retaliation claim.[9]

That being said, the question is against which Defendants she has adequately stated such a claim.  Here, Lemmon, as the DOC Commissioner, had no direct involvement in the disciplinary actions against Medley.  All Section 1983 claims against him can only be characterized as "official capacity" claims and were automatically subject to dismissal.  Pavese is a policy coordinator with the DOC, who appears to have responded to letters from Medley regarding restriction of her visitation.  Again, at most he merely reviewed the allegedly improper conduct of others at Rockville; this was not enough to sustain any Section 1983 claims against him.  The same is true of VanNatta, who works at the DOC Central Office and merely was the second level grievance examiner for Medley's complaints; all Section 1983 claims against VanNatta were properly dismissed.  As for Stout, Milner, McCullough, and Ferguson, they were each

---

[9] The Defendants argue in part that in Medley's communications with DOC officials regarding her visitation restrictions, which were attached as "exhibits" to her complaint, she did not directly accuse the officials of retaliating against her, and thus she cannot raise that claim now.  We do not believe these communications, even if we considered them to be part of Medley's complaint, are dispositive at this point in the litigation on the issue of retaliation.

24

alleged to have directly participated in the initial visitation restrictions. These allegations are sufficient to support individual capacity Section 1983 claims against these persons for purposes of a motion to dismiss. Regarding White, although as a grievance examiner at Rockville she might ordinarily be automatically exempt from Section 1983 liability, Medley has alleged that she failed to investigate Medley's grievances, prevented their processing, and gave inaccurate information regarding the grievance process. At least for purposes for a motion to dismiss, Medley has adequately stated individual capacity Section 1983 claims against White. Medley also specifically alleges in her complaint that Stout, Ferguson, Milner, McCullough, and White were involved in the decision to transfer her to IWP. Thus, Medley has adequately stated First Amendment retaliation claims as to those five individuals.

**Conclusion**

We affirm the dismissal of all of Medley's claims related to alleged violations of the Indiana Code and the Indiana Constitution. We also affirm the dismissal of Medley's Due Process and Equal Protection claims under the United States Constitution, as well as her claim that the "three strikes" policy infringes upon her First Amendment "right of association." However, we reverse the dismissal of Medley's First Amendment retaliation claims against Stout, Ferguson, Milner, McCullough, and White; the dismissal of those claims as to Lemmon, Pavese, and VanNatta is affirmed. We remand for further proceedings consistent with this opinion.

25

Affirmed in part, reversed in part, and remanded.

NAJAM, J., and BAILEY, J., concur.