In the

# United States Court of Appeals

## For the Seventh Circuit

No. 15-1703

GILBERT KNOWLES,

*Plaintiff-Appellant,*

*v.*

RANDY PFISTER, Warden of Pontiac Correctional Center,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Central District of Illinois.
No. 1:14-cv-01129-JES — **James E. Shadid**, *Chief Judge.*

SUBMITTED JUNE 15, 2016 — DECIDED JULY 13, 2016

Before WOOD, *Chief Judge*, and POSNER and FLAUM, *Circuit Judges*.

POSNER, *Circuit Judge*. The plaintiff, a prisoner in Illinois's Pontiac Correctional Center, appeals from the denial of his motion in the district court for a preliminary injunction that would allow him to wear a religious medal called a "pentacle medallion"—a five-pointed silver star set in a circle less than an inch in diameter. Here is a typical such medallion:



The pentacle medallion is to the Wiccan religion what the cross is to many Christians; the plaintiff claims that it protects his body and his spirit against "harm, evil entities, and negative energy."

The Wiccan religion (or "Wicca") is a neo-pagan, polytheistic, and pantheistic faith based on beliefs that predate Christianity. See *O'Bryan v. Bureau of Prisons*, 349 F.3d 399, 400 (7th Cir. 2003), citing Phyllis W. Curlott, *Wicca and Nature Spirituality, in Sourcebook of the World's Religions* 113 (Joel Beversluis ed., 3d ed. 2000); see also Selena Fox, "Introduction to the Wiccan Religion and Contemporary Paganism," *Circle Sanctuary*, www.circlesanctuary.org/index.php/about-paganism/introduction-to-the-wiccan-religion-and-contemporary-paganism (visited July 12, 2016, as was the other website cited in this opinion). Although there is variation within the Wiccan community, most Wiccans practice witchcraft, worship nature, meditate, and participate in rituals celebrating the new and full moon. John Gordon Melton, "Wicca,"

*Encyclopædia Britannica*, www.britannica.com/topic/Wicca. Courts have recognized that "the Church of Wicca occupies a place in the lives of its members parallel to that of more conventional religions." E.g., *Dettmer v. Landon*, 799 F.2d 929, 932 (4th Cir. 1986).

The plaintiff, who is a Wiccan, obtained a one-inch pentacle medallion attached to a chain to wear around his neck. The medallion was small enough to comply with prison regulations regarding jewelry worn by prisoners. But the day after issuing him a jewelry retention permit the prison confiscated the medallion, precipitating this suit against the prison's warden under the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc–1. The plaintiff filed this suit after failing to obtain relief through the prison's administrative process.

The warden's first line of defense was that the Illinois Department of Corrections prohibits inmates from possessing "five and six-point star symbols" because they're usable as gang identifiers; forbidding them is intended "to curtail gang members … within the institution from communicating with one another" and to protect prisoners from being mistaken as gang members and possibly attacked by members of rival gangs (that is, rival to the gang to which the prisoner victims are mistakenly believed to belong).

Without addressing the merits of either the suit or the defense, the district judge refused to issue a preliminary injunction. His grounds were threefold: the plaintiff had not clearly demonstrated that he lacked an adequate remedy at law, did not face "an irreparable harm" (because he was being denied "only one aspect of his ability to practice his religion while his litigation is pending"), and was asking for in-

junctive relief that would require the defendants to act, rather than just preserving the status quo. We have trouble seeing the force of these points—(1) what an adequate remedy at law would be (monetary compensation for the loss of a religious entitlement?); (2) how forbidding a religious observance important to a devout practitioner could be thought harmless to him because other observances remained open to him (an argument rejected in *Holt v. Hobbes*, 135 S. Ct. 853, 862 (2015), which stated that "RLUIPA's 'substantial burden' inquiry asks whether the government has substantially burdened religious exercise … not whether the RLUIPA claimant is able to engage in other forms of religious exercise"), especially observances that might be much less important to his religion; and (3) how the plaintiff could obtain *any* relief unless the warden was enjoined from violating RLUIPA.

RLUIPA states that "no government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution … even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc–1(a). The "unless" clause doesn't seem applicable to the plaintiff in this case, who is willing to wear his medallion under his shirt whenever he's outside his cell to protect himself from being identified as a gang member. Cf. *Schlemm v. Wall*, 784 F.3d 362, 366 (7th Cir. 2015). And while the warden contends that other inmates might see the medallion while the plaintiff is showering, nothing in the record supports this contention; there isn't even evidence that the plaintiff ever *wears* his

medallion in the shower, or that the wearing of a pentacle medallion, whether openly or under one's shirt, by *any* prisoner at Pontiac has ever caused a problem.

The plaintiff tendered an affidavit from another Wiccan prisoner, who had prevailed in a suit to prevent the confiscation of *his* pentacle medallion. See *Goodman v. Walker*, No. 03-CV-202-WDS (S.D. Ill. Aug. 13, 2007). The affiant attested that he'd worn his medallion in maximum security prisons since 1998 without ever experiencing threats or violence from other inmates.

The plaintiff has demonstrated his entitlement to the preliminary injunction that he is seeking. His freedom of religion has been gratuitously infringed by the prison. The judgment of the district court is reversed with instructions to grant the preliminary injunction sought by the plaintiff.

REVERSED AND REMANDED, WITH INSTRUCTIONS